(59 P.3d 1025)
No. 88,156

In the Matter of the Marriage of DIANE M. ALLEY (formerly BROTHERTON), *Appellant,* and RICKY L. BROTHERTON, *Appellee.*

—

Opinion filed November 27, 2002.

*Paul Arabia,* of Wichita, for appellant.

*William A. Vickery,* of Wichita, for appellee.

Before MARQUARDT, P.J., ELLIOTT, J. and LARSON, S.J.

MARQUARDT, J.: Diane M. Alley (formerly Brotherton) appeals the trial court's order holding her in indirect contempt of court. We affirm.

In December 1999, Diane filed a petition for dissolution of her marriage to Ricky L. Brotherton. The parties signed a property

settlement agreement (PSA) that was incorporated into the journal entry and decree of divorce entered on July 26, 2000. The PSA divided the property of the parties and gave Diane the personal property that was currently in her possession. Photographs, photo albums, videotapes, and other family memorabilia were to be divided equally between the parties.

Among the items in Diane's possession were: a grandfather clock made by Ricky's father; a chest that belonged to Ricky's grandmother; shovels that belonged to Ricky's grandfather; rocks from the farm where Ricky was born; tools and a tool box; a nail box; and Navy memorabilia. Ricky claimed that these items were his pursuant to the terms of the PSA. Diane failed to give the items to Ricky.

On April 30, 2001, Ricky's counsel sent a letter to Diane's counsel demanding delivery of the identified items. Shortly thereafter, Ricky received some personal items, pictures, videotapes, and memorabilia. None of the items listed in the demand letter was given to Ricky.

On July 11, 2001, Ricky filed an affidavit in contempt, stating that Diane had failed to give him his share of the photographs, photo albums, videotapes, and other personal property, including family heirlooms, that were awarded to Ricky pursuant to the PSA. The trial court issued a citation in contempt and ordered Diane to appear and show cause why she should not be held in indirect contempt of court for failure to comply with court orders.

A contempt hearing was held on September 26, 2001. Diane testified that she had possession of the memorabilia specified in Ricky's demand letter and had decided what she would give to him. Diane stated for the first time that Ricky could have the chest that belonged to his grandmother and the rocks from the farm. She said that the only reason she had not given him the items was because they were not specifically itemized in the PSA. Ricky testified that he had attempted to get some of the items listed in his demand letter and other photos and family memorabilia but was told by Diane that he could not have them because they belonged to her.

The trial court held Diane in contempt for failure to give Ricky his personal property. The trial court awarded Ricky everything listed in his demand letter and $500 in attorney fees.

Diane filed a motion to alter or amend the trial court's judgment, stay the order requiring delivery of certain items of personal property, and establish the amount of a supersedeas bond for appeal. A hearing was held, and the trial court denied Diane's motion to alter or amend and her request to stay the order of delivery and established a supersedeas bond of $5,000. The trial court required Diane to give Ricky certain items of property by October 27, 2001.

The parties could not agree on a journal entry for the contempt proceeding, and a hearing was held. Ultimately, the journal entry stated that Diane was in indirect contempt of court for her failure to give Ricky his equal share of the photographs, photo albums, videotapes, and other family memorabilia in a timely fashion. Diane timely appeals.

Diane argues that the trial court did not have jurisdiction over the contempt proceeding because she was never personally served with the notice of hearing. See K.S.A. 2001 Supp. 20-1204a(b). The notice of the hearing was mailed to her counsel, who duly advised her of its receipt. Diane also maintains that she did not, at any time, authorize her counsel to waive the service requirement, nor did she knowingly do so by her participation in the hearing. This issue is being brought before this court for the first time on appeal.

There is nothing in the record on appeal to support Diane's lack of service contention. An appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 777, 27 P.3d 1 (2001). Diane attached two affidavits to her brief; however, these affidavits are not in the record on appeal and will not be considered by this court. An appendix to an appellant's brief cannot be used as a substitute for the record on appeal. Supreme Court Rule 6.02(f) (2001 Kan. Ct. R. Annot. 35); see *D.M. Ward Constr. Co. v. Electric Corp. of Kansas City*, 15 Kan. App. 2d 114, 121, 803 P.2d 593 (1990), *rev. denied* 248 Kan. 994 (1991).

Jurisdiction may be raised for the first time on appeal. *Rivera v. Cimarron Dairy*, 267 Kan. 865, 868, 988 P.2d 235 (1999). However, where facts are at issue, the matter should have been raised

at the trial court level. There is no evidence in the record on appeal to support Diane's lack of jurisdiction argument.

Alternatively, it could be said that Diane voluntarily submitted herself to the jurisdiction of the trial court by her appearance at three different hearings. She did not object to the trial court's lack of personal jurisdiction at any of the hearings. Jurisdiction over a party can be acquired only by issuance and service of process in the method prescribed by statute or by voluntary appearance. *Haley v. Hershberger*, 207 Kan. 459, 463, 485 P.2d 1321 (1971). A party may not present a case in the hope that the trial court will resolve the claims in a favorable manner and then, when an unfavorable verdict has been rendered, claim that the trial court lacked personal jurisdiction. See *Carrington v. Unseld*, 22 Kan. App. 2d 815, 820, 923 P.2d 1052 (1996).

Next, Diane contends that the trial court erred in finding her in contempt for failure to comply with the division of property set forth in the PSA. Diane states that she is "incensed and humiliated" from being held in contempt, and the sole purpose of her appeal is to vindicate her position and clear her name.

There is a dual standard of review in an appeal from a finding of contempt. This court applies a de novo review to determine whether the alleged conduct is contemptuous. An abuse of discretion standard is applied in reviewing the sanctions imposed. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002).

In *State v. Jenkins*, 263 Kan. 351, 950 P.2d 1338 (1997), the Kansas Supreme Court set forth the definition of civil contempt. It is the failure to do something ordered by the trial court for the benefit or advantage of another party to the proceeding. Contempt is a remedial or corrective action meant to coerce a party into action. 263 Kan. at 358. Here, Diane was held in contempt for failure to properly comply with the PSA.

The crux of Diane's argument on appeal is that the PSA was ambiguous because the parties had differing ideas about what was to be considered "family memorabilia" and what other property, if any, was to be given to Ricky.

Appellate review focuses on whether the facts of the case show conduct that constitutes contempt. *State v. Williams*, 20 Kan. App.

2d 185, 187, 884 P.2d 755 (1994). The facts of this case reveal that Diane gave nothing to Ricky until a demand letter was sent to her attorney 9 months after the divorce was final. Even after the demand letter was sent, Diane did not give Ricky the photographs and videotapes. Prior to the contempt action being filed, Ricky had received only the wedding pictures, union files, one videotape, and his navy lantern. Diane never gave Ricky the items listed in the demand letter, which, by her own testimony, were family memorabilia.

In his findings, the trial judge stated:

> "The simple fact is that [Diane] was to deliver half of the memorabilia beginning on the date of journal entry, on July 26th of last year. And even by her own testimony she didn't complete that until after the contempt was filed, until approximately one year later. And I am—frankly, I think Mrs. Alley is lacking in candor in saying the only reason, it just was too hard to get it all done. If she truly wanted closure, she would have been working on it and attempting to get it done as soon as possible, as she could have. . . .
>
> "So with regard to the personal property, specifically because she didn't, even by her testimony, get this done until after the contempt was filed, I'm holding her in contempt of court for failure to deliver the personal property."

Whether a particular act or omission is contemptuous depends upon the nature of the act or omission as well as all surrounding circumstances, including the intent and good faith of the party charged with contempt. *Williams*, 20 Kan. App. 2d at 187.

It is clear from Diane's own testimony that she knew, at a minimum, she had not given the items to Ricky. Further, Diane did not even attempt to comply with the PSA until after the demand letter was sent. She had not substantially complied with the agreement until after the contempt citation was filed. The evidence shows that Diane was not acting in good faith and had no intention of complying with the PSA. The trial court did not err in finding Diane in contempt of court for failure to comply with the PSA.

As a result of being held in contempt, Diane was ordered to give Ricky the items listed in the demand letter and pay $500 in attorney fees to Ricky. Only the latter can be considered a sanction. The former was simply an order to comply with the PSA.

In *Bond v. Albin*, 29 Kan. App. 2d 262, 28 P.3d 394 (2000), the trial court assessed the costs and expenses of an unattended deposition and the related contempt proceeding to defendant. On appeal, this court found that the costs and expenses assessed to defendant were designed to compensate the plaintiff for her financial loss occasioned by the inappropriate behavior of defendant. Thus, this court held that the sanctions imposed were reasonable and authorized by law. 29 Kan. App. 2d at 267. Likewise, in the instant case, the award of attorney fees was designed to compensate Ricky for his financial loss occasioned by Diane's inappropriate behavior. The amount imposed was reasonable and authorized by law. See K.S.A. 2001 Supp. 20-1204a(b). The trial court did not err in awarding Ricky $500 in attorney fees.

Ricky has filed a motion for attorney fees pursuant to Supreme Court Rule 7.07(b) (2001 Kan. Ct. R. Annot. 52), which provides that appellate courts may award attorney fees on appeal in any case in which the trial court had authority to award attorney fees. K.S.A. 2001 Supp. 20-1204a(b) grants the trial court such authority. See *Bond*, 29 Kan. App. 2d at 267. Supreme Court Rule 7.07(c) (2001 Kan. Ct. R. Annot. 52) provides, in part:

"If the appellate court finds that an appeal has been taken frivolously, or only for purposes of harassment or delay, it may assess against an appellant or appellant's counsel, or both, the cost of reproduction of the appellee's brief and a reasonable attorney fee for the appellee's counsel."

During the contempt proceeding, Diane clearly stated that she decided what Ricky would receive without any input from him. She made the decision not to give him his grandfather's shovels, his grandmother's chest, the grandfather clock his father had made, his Navy memorabilia, and other things that he listed in his demand letter to her. She claimed that these items belonged to her. It was clear that she was in contempt of a court order and had no basis for appealing the issue to this court. We find that her appeal is frivolous and award additional attorney fees to Ricky in the amount of $2,130.00 and costs of $125.11.

The trial court's ruling is affirmed. Appellate attorney fees and costs are granted to Ricky.