No. 86,035

STATE OF KANSAS, *ex rel.* PAUL J. MORRISON, DISTRICT ATTORNEY, TENTH JUDICIAL DISTRICT, *Appellee* v. OSHMAN SPORTING GOODS CO. KANSAS, D/B/A OSHMAN'S SUPERSPORTS USA, *Appellant.*

69 P.3d 1087

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 383, 42 P.3d 197 (2002). Opinion filed May 30, 2003.

*Daniel O. Herrington*, of Armstrong Teasdale LLP, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*David L. Harder*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, and *Paul J. Morrison*, district attorney, were on the brief for appellee.

The opinion of the court was delivered by:

LUCKERT, J.: Oshman Sporting Goods Co. Kansas, d/b/a Oshman's Supersports USA (Oshman) appealed the district court's imposition of civil penalties for overcharges on merchandise in violation of the weights and measures statutes, K.S.A. 83-201 *et seq.*, and the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.* The Court of Appeals reversed in a published decision with one judge dissenting, and this court granted the State's petition for review.

## Facts

In 1998, the Kansas Department of Agriculture randomly chose Oshman as the subject of a price verification inspection. The in-

spector randomly selected 100 items to price test, wrote down the product number of each item, manually entered each item into the point-of-sale system, recorded the price retrieved by the point-of-sale system, and then compared it to the advertised price of each item, noting any discrepancies. A 98% accuracy rate, counting both overcharges and undercharges, was considered a passing rate. A score below 98% prompted additional follow-up inspections.

Between March 1998 and June 1999, Oshman failed seven price verification inspections. There were a total of 25 overcharges amounting to $142.64, and a total of 44 undercharges amounting to $435.57. In any single inspection, the highest failure rate was 8 overcharges totaling $49.24 and 14 undercharges totaling $112.03.

On January 13, 2000, the Johnson County District Attorney filed a petition alleging that the price discrepancies discovered during the inspections constituted violations of the KCPA and K.S.A. 83-219. After a bench trial, the trial court found that each of the 25 overcharges constituted a violation of K.S.A. 83-219(a)(16) and that each violation of K.S.A. 83-219(a)(16) was also a violation of the KCPA pursuant to K.S.A. 83-219(d). The court imposed a civil penalty of $2,000 per violation, for a total fine of $50,000. Oshman timely appealed.

The Court of Appeals reversed in a published opinion, with one judge dissenting. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 30 Kan. App. 2d 383, 42 P.3d 197 (2002). The majority ruled that K.S.A. 83-219(a) applied only to the owner of a commercial weighing or measuring device, not the owner of a point-of-sale system; therefore, the statute did not apply to Oshman. 30 Kan. App. 2d at 387. The majority also rejected the State's alternative argument that Oshman's overcharges were violations of the KCPA independent of K.S.A. 83-219(a). The majority held that because an inspection by the Department of Agriculture was not a consumer transaction, no violations of the KCPA had occurred. 30 Kan. App. 2d at 387. This court granted the State's petition for review.

### The Trial Court and Court of Appeals Decisions

Oshman principal argument to both the trial court and Court of Appeals was that the State's allegations did not state a claim under

K.S.A. 83-219(a). The trial court found that Oshman had violated K.S.A. 83-219(a)(16) which makes it unlawful for "(a) . . . any owner of a commercial weighing or measuring device: (16) . . . to charge or attempt to charge, at the time of the sale of an item or commodity, a value which is more than the price which is advertised, posted or quoted." Oshman argued that K.S.A. 83-219(a) did not apply because it was not the owner of a commercial weighing or measuring device; rather, it was the owner of a point-of-sale system that was not included within the definition of a measuring device. The trial court disagreed, finding that the legislature intended a point-of-sale system to be a weighing or measuring device under K.S.A. 83-219.

The Court of Appeals found the pivotal issue in the case to be whether a point-of-sale system was included within the definition of a weighing device. The majority acknowledged the parties' arguments regarding various uses of the terms "weights and measures," "weighing and measuring devices," and "point-of-sale systems" within the weights and measures statutes, finding that "under the present ambiguities of the statutory scheme it is less than clear that a point-of-sale system comes within the definition of a measuring device." 30 Kan. App. 2d at 385. The majority focused on legislative amendments to the statutes in 1994 and 1996 as the source of the ambiguity:

"In 1994, the legislature amended K.S.A. 83-201 to include the definition of a point-of-sale system. See L. 1994, ch. 83, § 1. At the same time, the legislature also amended K.S.A. 83-219(a) to include subsections (13) through (16), which seem to address the misuse of point-of-sale systems. See L. 1994, ch. 83, § 4. At the hearing on this bill, the Director of the Division of Inspections of the Kansas Department of Agriculture commented: 'The purpose of this bill is to address technology changes in the industry and to provide the agency with clear authority to inspect and regulate point of sale or electronic price scanning equipment (scanners) which are currently used in commerce.' H.B. 3023, attachment 5.

"At the time of the 1994 amendments, the intent of the legislature seems to have been for K.S.A. 83-219(a) to apply to point-of-sale systems. Subsection (a) read: 'It shall be unlawful for any *person*' to commit the unlawful acts. This clarity was clouded in 1996 when the legislature again amended K.S.A. 83-219(a) and changed 'person' to 'owner of a commercial weighing and measuring device.' See L. 1996, ch. 146, § 24. The legislative history does not explain the reason for this change.

"We find that the legislative intent to include point-of-sale systems in the definition of 'weights and measures' after the 1996 amendments is not clear. We find that the trial court erred in applying K.S.A. 83-219(a)(16) to Oshman." 30 Kan. App. 2d at 386-87.

Judge Knudson dissented, finding it was not plausible that the legislature intended to negate the 1994 amendments necessary to inspect and regulate modern pricing computers by its enactment of the 1996 amendment to K.S.A. 83-219(a). Although he found no legislative history to explain the 1996 amendment, he opined that the term "person" may have been thought overly broad, subjecting a mere clerk to civil penalties. He also noted that the legislature had not rescinded K.S.A. 83-219(a) subsections (13) through (16) which address the misuse of point-of-sale systems and that the unifying definition of "weights and measures" at K.S.A. 83-201(a) continued to include point-of-sale systems. 30 Kan. App. 2d at 388-89.

*Statutory Interpretation of K.S.A. 83-201 and 83-219*

In its petition for review, the State contends that the Court of Appeals' majority erroneously interpreted the weights and measures statutes, K.S.A. 83-201 and 83-219. Specifically, the State disagrees with the majority's findings regarding the legislative history and legislative intent behind the 1994 and 1996 amendments to those statutes.

The interpretation of statutes is a question of law, and this court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

Again, the statute at issue, K.S.A. 83-219(a)(16) makes it unlawful for "any owner of a commercial weighing or *measuring device* . . . to charge or attempt to charge, at the time of the sale of an item or commodity, a value which is more than the price which is advertised, posted or quoted." (Emphasis added.) A "measuring device" is defined to include "all *weights*, scales, beams, *measures* of every kind, instruments and mechanical devices for weighing or measuring, and any appliances and accessories connected with any or all such instruments." (Emphasis added.) K.S.A. 83-201(k). The terms "weights" and "measures" are not defined separately, but

the definition of the term "weights and measures" means "all commercial weights or measures of every kind, instruments and devices for weighing and measuring, and any appliance and accessories associated with any or all such instruments and devices *and any point-of-sale system*." (Emphasis added.) K.S.A. 83-201(a).

A "point-of-sale system" is defined as "any combination of a cash register or other devices, or system, such as a scanner, capable of recovering stored information related to the price or computing the price of any individual item which is sold or offered for sale at retail. *A point-of-sale system may also include or be attached or connected to a weighing or measuring device*." (Emphasis added.) K.S.A. 83-201(l).

These terms are used inconsistently throughout the weights and measures statutes. Given the ambiguity of the terminology and its usage, this court must look to the design and language of the statute as a whole, as well as to external aids, that may reveal the intent of the legislature. Several canons of statutory construction support the conclusion that K.S.A. 83-219(a) was intended to apply to point-of-sale systems even after the 1996 amendment.

First, "[i]n construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. [Citation omitted.]" *Petty v. City of El Dorado*, 270 Kan. 847, 852, 19 P.3d 167 (2001). "Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted. [Citation omitted.]" *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

As the dissent noted, the majority of the Court of Appeals disregarded the unifying definition of "weights and measures" found in K.S.A. 83-201(a). The statute alleged to have been violated applied to owners of "measuring devices." K.S.A. 83-219(a). A "measuring device" includes "all weights . . . [and] measures." K.S.A. 83-201(k). " 'Weights and measures' means all commercial weights

or measures of every kind, instruments and devices for weighing and measuring, and any appliance and accessories associated with any or all such instruments and devices and *any point-of-sale system.*" (Emphasis added.) K.S.A. 83-201(a). Point-of-sale systems include scanners. K.S.A. 83-201(l).

When these provisions are read together, Oshman, by owning a scanner, owned a "point-of-sale system" which is a "weight and measure." A weight and measure is a "measuring device." The provisions of K.S.A. 83-219(a) apply to Oshman.

Additionally, the reading adopted by the Court of Appeals' majority did not give meaning to all provisions of the applicable statutes. If K.S.A. 83-219(a) is construed to be inapplicable to point-of-sale systems, then all of the other references to point-of-sale systems within the weights and measures statutes become meaningless. In other words, if it is not unlawful to misrepresent or miscalculate the price of merchandise using a point-of-sale system, why would the Department of Agriculture be required to inspect and test point-of-sale systems under K.S.A. 83-206(f) and approve or reject point-of-sale systems under K.S.A. 83-206(g)? Why would the Department of Agriculture be required to adopt rules and regulations concerning technical requirements for point-of-sale systems under K.S.A. 83-207? These statutes were amended to include references to point-of-sale systems in 1994, see L. 1994, ch. 83, secs. 2, 3, and the references have remained intact since then.

Additionally, it is appropriate for this court to consider the legislative history of the weights and measures statutes. "Although appellate courts will not speculate as to the legislative intent of a plain and unambiguous statute, [citation omitted] where the construction of a statute on its face is uncertain, the court may examine the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various suggested interpretations. [Citation omitted.]" *Estate of Soupene v. Lignitz*, 265 Kan. 217, 220, 960 P.2d 205 (1998). The Court of Appeals did consider some legislative history but did not consider other relevant portions of the legislative history.

In 1994, the legislature amended the weights and measures statutes to include point-of-sale systems by inserting references to point-of-sale systems throughout those statutes. In K.S.A. 83-201(a), the term "point-of-sale" system was added to the definition of the term "weights and measures." Definitions of the terms "point-of-sale system" and "scanner" were added at K.S.A. 83-201(l) and (m). K.S.A. 83-206, which sets out the duties of the Secretary of Agriculture with respect to the administration of the weights and measures inspection program, was amended to require the secretary to inspect and test commercial point-of-sale systems used in recovering stored information related to the price of any item sold at retail and to approve or reject those point-of-sale systems. K.S.A. 83-207, which authorizes the Secretary of Agriculture to adopt rules and regulations for the administration and enforcement of Chapter 83 was amended to include reference to point-of-sale systems. Finally, K.S.A. 83-219, which lists unlawful acts, was amended to include four new unlawful acts, 83-219(a)(13) through (16), all related to misrepresentations and miscalculations of price. L. 1994, ch. 83, secs. 1-4.

At hearings on the bill, the Director of the Division of Inspections for the Department of Agriculture offered the following testimony:

"The purpose of this bill is to address technology changes in the industry and to provide the agency with clear authority to inspect and regulate point of sale or electronic price scanning equipment (scanners) which are currently used in commerce.

"Current law addresses weighing and measuring devices but does not speak to point of sale systems such as scanners.

"I am sure that many of you have seen recent TV shows reflecting the economic fraud that can occur when point of sale systems are manipulated by unscrupulous individuals or where errors occur due to employee error or bar code problems.

"Our Weights and Measures program has been actively involved in checking scanners in Kansas and believe we are achieving compliance. This bill legalizes our activities and provides us with appropriate language in the unlawful acts section." Minutes, House Comm. on Agriculture, February 22, 1994 (H.B. 3023), attach. 1.

Although the 1994 amendments might have been drafted more artfully, it is clear that the legislature intended point-of-sale sys-

tems to be inspected and regulated by the Department of Agriculture as part of its weights and measures inspection program.

The problem arises with the 1996 amendment to K.S.A. 83-219(a) changing "person" to "owner of a commercial weighing and measuring device." L. 1996, ch. 146, sec. 24. The Court of Appeals found no legislative history explaining this amendment and stated that the legislative intent to include point-of-sale systems in the definition of "weights and measures" after the 1996 amendments was not clear. However, the minutes of the 1996 House and Senate Agriculture Committee meetings and the testimony offered regarding the 1996 Substitute for Senate Bill 705 offer some insight. The bill contained a variety of amendments to many of the weights and measures statutes. See L. 1996, ch. 146. At hearings on the bill, Carole Jordan, Program Analyst for the Department of Agriculture, offered testimony to the House Agriculture Committee, giving a history of the weights and measures program and the results of a Legislative Post Audit report identifying problems with the program and with the accuracy of weights and measures devices in the state. The bill contained changes proposed by the Department of Agriculture in response to the audit report. Minutes, House Comm. on Agriculture, March 7, 1996 (Sub. S.B. 705), attach. 1.

Ms. Jordan's testimony mentioned scanners:

"Scanners—in supermarkets, department and a variety of other stores—are a relatively new addition to the responsibilities of weights and measures officials. Assuring that prices scanned are the same as advertised is the function of price verification inspections. The inspection is not truly of the device, but rather of the accuracy of the price data regularly input into the store or chain's computer database. In turn, each scanner at a check-out counter is tied to the computer database. The state's population of scanners, estimated by the numbers of establishments, is at around 7,000 and growing rapidly. The state is still developing its inventory of these devices. . . .

. . . .

"Because of the large number of scanners . . . statistical testing provides the best and most economically feasible method of inspection to ensure accuracy. . . . [T]he state will design a random statistical test based upon the universe of scanners . . . . State inspectors will conduct statistical tests, follow up on consumer complaints and conduct investigations." Minutes, House Comm. on Agriculture, March 7, 1996 (Sub. S.B. 705), attach. 1.

Remembering that the term "scanner" is included within the statutory definition of a point-of-sale system at K.S.A. 83-201(l), this testimony shows that the Department of Agriculture, at least, fully intended to continue inspecting and regulating point-of-sale systems after the 1996 amendments to the weights and measures statutes. Since the bill was drafted by the Department of Agriculture, no amendment contained within that bill could have been intended to eliminate point-of sale systems from the application of the weights and measures statutes. This particular legislative history shows the intention of the Department of Agriculture when it interprets the statutes it is charged with enforcing; such an interpretation is entitled to judicial deference. See *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 317, 22 P.3d 600 (2001).

Further, the wording of the 1996 amendment was reversed in 2001, when the legislature amended K.S.A. 83-219(a) by again making it unlawful for any "person" to commit any of the listed acts. L. 2001, ch. 175, sec. 5; see K.S.A. 2002 Supp. 83-219(a). However, at the hearing on the 2001 House Bill 2102 amendment to K.S.A. 83-219(a), the Department of Agriculture offered the following testimony regarding the purpose of the amendment:

"K.S.A. 83-219. There are 25 unlawful acts contained in this statute, 19 of which do not require using a commercial weighing or measuring device. For example, it is unlawful to 'misrepresent or represent in a manner calculated or tending to mislead or deceive an actual or prospective purchaser, the price of an item offered, exposed or advertised for sale at retail.' Owning a commercial weighing or measuring device is not required for an individual or organization to misrepresent the price of an item. However, as it is currently written, it is unlawful only for an owner of a weighing or measuring device. The statute could create problems if an individual is using a commercial weighing or measuring device, but does not own it. The proposed amendment will allow the agency to take action against any entity that has committed unlawful acts, including businesses that rent or lease weighing or measuring devices." Minutes, House Comm. on Agriculture, January 31, 2001 (H.B. 2102), attach. 3.

Obviously, the Department of Agriculture recognized two problems with the language of K.S.A. 83-219(a): (1) that many of the unlawful acts listed in the statute did not require use of a commercial weighing and measuring device, and (2) that the statute as

written only applied to an owner—not a user or lessor—of a commercial weighing and measuring device. The first problem is the very one at issue in this case. It appears the Department of Agriculture realized that the language of K.S.A. 83-219(a) was inadequate to cover pricing misrepresentations and was attempting to remedy the problem by introducing the amendment.

Although courts ordinarily presume that by changing the language of a statute the legislature intended to change its effect, this presumption may be strong or weak, according to the circumstances, and may be wanting altogether in a particular case. *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 736, 648 P.2d 1143 (1982). Furthermore, "[w]hen a statute is ambiguous, amendment of the statute may indicate a legislative purpose to clarify the ambiguities in the statute rather than to change the law." 1A Singer, Statutes and Statutory Construction § 22.01 (6th ed. 2002).

The legislative history reveals that the 2001 amendment of K.S.A. 83-219(a) was intended as a clarification of an ambiguous statute rather than as a change in the law. The clear legislative intent was for point-of-sale systems to be inspected and regulated by the Department of Agriculture as part of its weights and measures inspection program.

Oshman offers one last argument, *i.e.*, that the weights and measures statutes are quasi-criminal; thus, the rule of lenity applies, citing *United States v. Granderson*, 511 U.S. 39, 54, 127 L. Ed. 2d 611, 114 S. Ct. 1259 (1994). Oshman argues it must receive the benefit of any ambiguity. In a case involving civil penalties assessed against an oil company by the Kansas Department of Health and Environment, the Court of Appeals recognized that a penalty provision in a statute should be strictly construed in favor of the person being penalized. *Radke Oil Co., Inc. v. Kansas Dept. of Health and Environment*, 23 Kan. App. 2d 774, Syl. ¶ 2, 936 P.2d 286 (1997). However, even in the context of a criminal statute, the rule of lenity is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001).

Reading all of the weights and measures statutes together, especially the unifying definition of "weights and measures" which includes point-of-sale system devices, and considering the legislative history behind the 1994, 1996, and 2001 amendments to those statutes, it is clear that the legislature intended point-of-sale systems to be included in the application of K.S.A. 83-219(a). Oshman's arguments fail.

### Violations of Kansas Consumer Protection Act

Having found that there was no violation of the weights and measures statutes, the Court of Appeals considered whether there were any violations of the KCPA, specifically K.S.A. 50-626(b). The trial court did not make such a finding and based its ruling solely on K.S.A. 83-219(d), which provides: "Violation of this section shall be deemed a deceptive act and practice as defined by K.S.A. 50-626 . . . ." Because we find, as did the trial court, that there were violations of the weights and measures statutes and because the State presents the KCPA violations as an alternative to the violations of the weight and measures statutes, we need not address the application of K.S.A. 50-626(b).

Because the Court of Appeals determined there were no statutory violations, it did not address the other issues raised on appeal. This court's order granting the State's petition for review did not limit the questions on review. Because this is a civil case, this court may consider and decide the issues under Supreme Court Rule 8.03(g)(1) and (h)(3) (2002 Kan. Ct. R. Annot. 56), and we elect to do so.

### Substantial Competent Evidence

Oshman argues that the trial court blindly accepted the State's allegations and disregarded evidence introduced by Oshman to explain the price discrepancies discovered by inspectors. The State responds that there was substantial competent evidence to support the trial court's findings.

This court is being asked to review the trial court's factual findings that Oshman committed 25 violations of K.S.A. 83-219(a)(16). The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent ev-

idence. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001). "The court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 387, 22 P.3d 124 (2001).

Oshman called two witnesses who explained that if an Oshman's employee saw a price ending in $.98 on shoes or clothing, the employee would know that an additional 25% should be deducted. The witnesses also explained that some items are ticketed with a sales tag or clearance sticker to alert the cashier of any discount. The witnesses believed the fact that inspectors entered the computer information instead of Oshman's employees might have explained some of the overcharges.

This testimony was offset by one witness' admission that he had been too busy to observe the inspections and did not contact the Department of Agriculture when he discovered errors in the inspector's report. Also, even though both witnesses testified that the consumer would always get the lowest price in the event of a difference between the posted price and the price retrieved by the computer, both acknowledged it would be up to the consumer or the cashier to notice the discrepancy.

The trial court acknowledged Oshman's evidence "might have cast some doubt on whether all of those overcharges were intentional overcharges, or whether they might be explained by some system or not . . . ." However, the court did not find that evidence persuasive, stating: "[I]t appears to the Court that the scanners were set up to charge, or attempt to charge, a value which is more than the price which is advertised, posted or quoted."

Based upon the testimony of the inspectors and their inspection reports, there was substantial competent evidence to support the trial court's factual findings.

### Amount of Fine

The remaining issues relate to the imposition of the fine which was imposed under the KCPA. First, Oshman argues that the trial court erred in determining that each overcharge rather than each failed inspection was a violation of the KCPA.

Oshman relies upon the National Institute of Standards and Technology (NIST) Handbook 130 (1997) to support its argument that the unit of violation is the failed inspection, not the individual overcharge. The Kansas Department of Agriculture has adopted the NIST Handbook 130 and follows its guidelines regarding price verification inspections. According to the NIST Handbook 130, 98% accuracy is the passing rate. Although both overcharges and undercharges are counted for purposes of determining accuracy, fines and penalties are assessed only when overcharges exceed 2% on the verification sample. Of the seven failed inspections in this case, two of those inspections involved only two overcharges. Therefore, Oshman argues the trial court should have imposed fines based on 5 violations, rather than 25.

The trial court found Oshman's overcharges were violations of K.S.A. 83-219(a)(16) which prohibits charging or attempting to charge a value at the time of sale more than the price advertised, posted, or quoted. K.S.A. 83-219(d) deems any violation of the weights and measures statutes to be a deceptive act and practice under the KCPA. The clear language of K.S.A. 83-219(a)(16) indicates that the unit of violation is the overcharge or attempted overcharge, not the failed inspection.

Oshman also argues, that K.S.A. 50-636(d) should have been considered by the trial court. The trial court imposed civil penalties pursuant to K.S.A. 50-636(a), which states that any act or practice deemed to be a violation of the KCPA renders the violator liable for up to $5,000 per violation. K.S.A. 50-636(d) provides: "Any act or practice declared to be a violation of this act not identified to be in connection with a specific identifiable consumer transaction but which is continuing in nature shall be deemed a separate violation each day such act or practice exists." Oshman contends application of this section results in 5 days of violations (for the five failed inspections).

When K.S.A. 50-636 was amended in 1993 to include subsection (d), see L. 1993, ch. 177, sec. 3, the Attorney General's office informed the legislature that the new provision:

"would clarify that a continuing violation constitutes a separate violation each day the practice continues, and is not just a single violation. This addresses situations

such as the gasoline pump labeling cases where specific consumer transactions could not easily be identified, and where the deceptive label remained in place for weeks. A single civil penalty became insignificant in comparison to the volume of consumers involved. A civil penalty for each day the practice continued would have made the practice less profitable for the supplier." Minutes, House Comm. on Agriculture, March 17, 1993 (S.B. 245), attach. 2.

Clearly, it was not intended that this provision would apply when there was an identifiable transaction as in this case. Therefore, the trial court correctly applied K.S.A. 50-636(a) rather than 50-636(d). We affirm the trial court's determination that each of the 25 overcharges was a violation of the KCPA.

Finally, Oshman argues that the $50,000 fine is "shocking," given that the 25 overcharges totaled only $142.64, especially in light of the fact that this case involved no actual damages and, according to Oshman, no intentional conduct.

We agree. We note several considerations in reaching this conclusion: There was no evidence offered regarding any actual sales of the overcharged items to consumers; the nature of the violations was not particularly egregious; there was no allegation that Oshman intentionally overcharged consumers; and the total amount of the overcharges was only $142.64. In fact, the undercharges discovered by inspectors were greater in number and total amount than the overcharges. We find the fine of $50,000 to be excessive. See *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 51-52, 913 P.2d 209 (1995). We reverse and remand for imposition of an appropriate fine.

In making this determination, we are mindful that the KCPA provides no guidelines for the trial court in determining the amount of a civil penalty, aside from the upper limit of $5,000 per violation. However, if the State had sought civil penalties pursuant to K.S.A. 83-501, rather than the KCPA, the trial court would have been required to take the following into consideration: "(1) The extent of harm caused by the violation; (2) the nature and persistence of the violation; (3) the length of time over which the violation occurs; (4) any corrective actions taken; and (5) any and all relevant circumstances." K.S.A. 83-501(b). While these considerations are

not directly applicable, they offer guidance in assessing the fine to be imposed.

We reverse the Court of Appeals on the issue of whether there was a violation of K.S.A. 83-219(a)(16). We affirm the trial court on all issues except the amount of fine, which we reverse and remand for determination of an appropriate fine.

ABBOTT and GERNON, JJ., not participating.
LARSON, S.J., and WAHL, S.J., assigned■