NOT DESIGNATED FOR PUBLICATION

No. 113,265

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LORI D. GILLIAM
*Appellee*,

and

TROY F. GILLIAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; DANIEL L. LOVE, judge. Opinion filed July 15, 2016. Affirmed in part, vacated in part, and remanded.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant.

*Laura H. Lewis*, of Martindell Swearer Shaffer Ridenour LLP, of Cimarron, for appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: Troy F. Gilliam appeals the district court's finding of indirect civil contempt for failing to pay a property judgment and the resulting sanction imposing a 90-day suspended jail sentence. We find the district court to be correct in adjudging Troy guilty of indirect civil contempt. However, we also find the court erred in imposing a flat jail sentence as punishment for indirect civil contempt and remand for correction of that sanction.

1

Lori D. Gilliam filed for divorce from Troy in November 2009. At the time the divorce was filed, a temporary order was issued enjoining the parties from dissipating any assets until a final hearing was held in the case. Shortly thereafter Troy moved to Houston, Texas, and used nearly all of the parties' assets, which derived principally from cashing out Troy's retirement plans, to purchase two Federal Express (FedEx) routes. These investments ultimately failed, and as a result Troy lost all, or nearly all, of the parties' money he spent on the routes. Lori took no part in these financial matters. After this business failure, Troy moved back with his family in Louisiana but ultimately wound up working for the Department of Veterans Affairs in Arkansas.

A hearing to finalize the divorce was held by the district court on November 1, 2010, and in the final decree the district court ordered Troy to pay Lori $110,519.44 as part of the property settlement to account for the dissipation of funds caused by the failure of Troy's FedEx business ventures.

Lori filed a pro se motion to show cause in January 2013 asking the district court to order Troy to demonstrate why he should not be held in indirect civil contempt for violating the court's November 2010 judgment. In an affidavit, Lori stated that Troy had yet to pay her the sum ordered by the court. After securing an adjustment to child support payments, Lori acquired counsel and filed a new contempt citation and show cause order, based upon allegations that Troy had still failed to pay the amount the court ordered or interest on that amount.

On October 16, 2014, at a hearing on this second contempt filing, Troy testified that he had moved to Houston before the divorce was finalized in 2009, operated there as a FedEx route contractor until his business failed following his own mistakes in payroll taxes, at which time he moved to Louisiana and on to Arkansas. He purchased the Texas

FedEx routes in 2009, but he did not obtain any money for them when he got rid of the routes in 2011.

On cross-examination, Troy testified that he had never made any payment toward the judgment because, once he bought the routes, he did not have the $110,000. He acknowledged that he owed Lori the amount of the judgment and stated that he had made settlement offers to Lori, including an offer for $25,000, but she declined to settle. He indicated he could pay $100 to $200 a month toward the judgment.

Lori testified that she declined the $25,000 settlement offer around the time that she appeared before the district court on her pro se show cause motion. She had previously told Troy that she was willing to waive the interest, which he rejected, but had not otherwise agreed to accept anything less than the full judgment.

Following argument, the district court observed that Troy had dissipated assets contrary to the court's temporary orders when he purchased the FedEx routes in 2009. The court concluded that Troy's failure to pay the judgment or even try to make payments on the amount owed constituted contempt. The court imposed a 90-day sentence suspended for 24 months, contingent on Troy making $500 monthly payments, increasing to $1,000 once he was no longer required to provide support for his eldest daughter.

After the hearing, the district court filed a journal entry finding Troy in willful indirect civil contempt for failure to pay the divorce judgment plus interest. The court noted that it had suspended Troy's sentence in order to give him "the opportunity to purge himself of contempt" by making monthly $500 payments to Lori until the full judgment plus interest was paid.

Troy objected to the journal entry, first challenging the "defined jail sentence" for indirect civil contempt and also challenging the probation period. The court overruled

Troy's objections, noting that Troy had violated the divorce judgment by dissipating over $100,000 in jointly held assets and failing to pay the judgment. It concluded that it had the statutory authority to impose the sanction in its previous order and declined to modify the previous journal entry. Troy has timely appealed from these orders.

ANALYSIS

Troy first argues that evidence at the show cause hearing demonstrated that he was not willfully refusing to pay the divorce judgment but instead was unable to pay due to financial hardship. He contended that since he kept up with child support payments and made offers to settle the judgment, his failure to pay was excusable and did not amount to contempt in the absence of wrongful intent.

Additionally, Troy contends that the district court imposed an improper sentence for indirect civil contempt because the district court failed to provide an opportunity, as required, for him to purge himself of the contempt by fully paying the judgment. Neither the court's oral pronouncement at the show cause hearing nor its written order indicate that Troy would be released from the unsupervised probation if he paid the full judgment in less than 24 months. As such, Troy complains the sentence is punitive in nature and inappropriate for indirect civil contempt, and, even if it is only unclear as to whether the sentence is punitive or remedial, it should be vacated.

This court applies a dual standard of review to a contempt of court finding, first reviewing the contempt determination de novo and, second, reviewing the sanctions for abuse of discretion. *In re marriage of Shelhamer*, 50 Kan. App. 2d 152, 154, 323 P.3d 184 (2014).

An appellate court applies a de novo standard of review to determine whether the alleged conduct is contemptuous. *In re Marriage of Brotherton*, 30 Kan. App. 2d 1298,

4

1301, 59 P.3d 1025 (2002). The Kansas Supreme Court has defined civil contempt as "'"the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding."'" *State v. Jenkins*, 263 Kan. 351, 358, 950 P.2d 1338 (1997). The contempt statute, K.S.A. 20-1202, sets out two major classes of contempt, direct or indirect contempt. Direct contempt is committed during the sitting of the court or before a judge at chambers. All other instances of contempt are indirect. K.S.A. 20-1202. In this case, the alleged contempt was clearly indirect; *i.e.*, conduct outside the presence of a judge.

Civil contempt proceedings are remedial in nature and designed to advance the private right of a litigant won by court order. Any civil contempt penalty is intended to be coercive, and relief can be achieved only by compliance with the order. Any sentence imposed for a civil contempt violation must permit the contemnor to "'unlock the door of the . . . jail and discharge [himself or] herself by doing what [he or] she has previously failed to do.'" *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 417-18, 197 P.3d 370 (2008).

An appellate court reviewing the determination of civil contempt focuses on whether the facts of the case show conduct constituting contempt. *In re Marriage of Brotherton*, 30 Kan. App. 2d at 1301. Whether a particular act or omission is contemptuous depends upon the nature of the act or omission as well as all surrounding circumstances, including the intent and good faith of the party charged with contempt. 30 Kan. App. 2d at 1302. However, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003).

The evidence from Lori's affidavit and the show cause hearing clearly indicates that Troy made no effort to pay the divorce property judgment to Lori, in violation of the court's order. Troy admitted that he owed her the amount of the judgment and did not

5

deny violating the order but attempted to excuse his disobedience by testifying that he could not pay the judgment due to financial hardship. But even if Troy's attempt to excuse his disobedience of the court order was relevant as evidence that his conduct was not "willful," he never attempted to modify the order in light of his changed financial circumstances, nor did he justify or explain why he spent the assets after he was ordered not to dissipate them.

In fact, had Troy followed the district court's orders and not dissipated the proceeds from his liquidated pension plans by buying FedEx routes, he would have had the financial ability to pay the property division judgment when it was issued. Additionally, Troy's financial difficulties in the wake of the judgment appear to be the result of his own mistakes in managing his business and not the result of circumstances beyond his control. Although Troy did communicate his financial situation to Lori, he made no effort to address his acknowledged debt under the judgment beyond asking her to accept less than 25% of the amount ordered. This hardly seems to be an excusable failure to pay. Further, Troy's compliance with the child support order does not mitigate his absolute failure to comply with the property judgment, especially considering that these support payments were automatically withheld from his pay during the time he had been employed with the federal government. Troy's behavior clearly qualifies as an intentional "''failure to do something ordered by the court for the benefit or advantage of another party to the proceeding.''" *Jenkins*, 263 Kan. at 358. As such, the district court did not err by determining that Troy's conduct constituted indirect civil contempt.

Troy also takes issue with the sanction imposed by the district court following its contempt finding. As noted above, the district court imposed a flat 90-day sentence for contempt, which was suspended for 24 months on the condition that Troy make the required payments. Troy complains that flat sentencing is illegal in indirect contempt cases, and we agree.

"'In [an indirect contempt] case, imprisonment is not inflicted as punishment but is intended to be remedial by coercing the party in contempt to do what such party has refused to do, and the proper sentence is that the party in contempt stands committed unless and until the affirmative act required by the court's order is performed.'

. . . .

". . . Under a flat sentence, there is no possibility for release if the contempt is purged. In all indirect civil contempt cases, the contemnor must be permitted to unlock the door of the county jail and discharge [himself or] herself by doing what [he or] she has previously failed to do." *In re Conservatorship of McRoy*, 19 Kan. App. 2d 31, 34, 861 P.2d 1378 (1993).

"'If the sentence [for contempt] is limited to imprisonment for a definite period, the defendant is furnished no key, and he [or she] cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in nature, but solely as punishment for the completed act of disobedience.'" *Goetz v. Goetz*, 181 Kan. 128, 138, 309 P.2d 655 (1957).

Given these long-established principles, it was clear error for the district court to impose a flat 90-day sentence for indirect civil contempt, and that portion of its order is hereby vacated. Since the flat sentence was improper, it logically follows that there was no valid penal sanction for the court to suspend, which likewise renders any suspension order null and void as a matter of law by extension.

Troy argues in his brief that the district court did not expressly indicate during either oral pronouncement or in its written order that Troy would be freed from sanction if he fully paid the judgment to Lori. Since we have found the entirety of the sanctioning method utilized by the district court to be defective, this argument is moot. But since we have also found that the court properly found Troy in contempt by wrongfully failing to pay what he owed Lori under the court's prior order, common sense would dictate that payment in full by Troy would eliminate any basis for sanctioning.

The district court's finding of contempt is affirmed, the imposition of a 90-day jail sentence for contempt is vacated, and the case is remanded to the district court for further proceedings consistent with this decision.