NOT DESIGNATED FOR PUBLICATION

No. 124,721

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

KELLI MARTIN,
*Appellee*,

and

MARK MARTIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Labette District Court; FRED W. JOHNSON JR., judge. Opinion filed September 9, 2022. Reversed and remanded with directions.

*Robert E. Myers* and *Amy M. Ross*, of Columbus, for appellant.

*Seth A. Jones*, of Hines and Jones, LLC, of Erie, for appellee.


Before GARDNER, P.J., MALONE and CLINE, JJ.


PER CURIAM:  This appeal arises from a divorce proceeding and involves payment of the couple's credit card debts. The district court ordered Kelli Martin to pay certain debts while the divorce was pending and in the final decree. Kelli did not comply with these orders, causing Mark Martin to file two motions for contempt for her violation of the temporary orders and another motion to enforce her payment obligations under the final decree. Mark testified he paid these debts to preserve his credit rating. He sought a judgment against Kelli to reimburse him for these payments and his attorney fees and

1

asked the court to hold Kelli in contempt. The district court characterized Mark's payments as a "gift" and denied his motion.

We find the district court lacked jurisdiction to modify the distribution of debt under its final property division order. We also find the court's decision on Mark's motion for contempt confusing and inconsistent with its findings on that issue. We reverse the district court's order and remand the matter with directions to determine the amount of the judgment the district court should enter for Mark against Kelli and for reconsideration of Mark's motions to hold Kelli in contempt.

FACTS

In October 2019, Kelli petitioned for divorce from her husband Mark in Labette County District Court. Along with the petition, she moved for ex parte orders seeking a temporary division of the couple's property and debts. The district court issued a temporary order two days later, dividing the property and debts as Kelli requested. The court held Kelli responsible for making payments on the "4-Runner," Sears credit card, and Sam's credit card. Kelli later moved for temporary and permanent spousal maintenance, to which Mark objected.

In April 2020, Mark moved to hold Kelli in contempt for failing to make payments on the Sears and Sam's cards as ordered. He claimed he was forced to make the payments himself to avoid damage to his credit score and sought sanctions to include costs and attorney fees. A month later, he filed an amended affidavit alleging that Kelli had also failed to make the payments on the Toyota.

In July 2020, the district court ordered Kelli to appear and show cause why she should not be punished for contempt of court. Mark's contempt motion and Kelli's motion for maintenance were set for hearing along with the final divorce hearing. The transcript

2

of this hearing is not in the record nor does the record include any details about the disposition of Mark's contempt motion.

The district court issued a divorce decree on August 6, 2020, but took all other issues under advisement.

In November 2020, Mark filed a second amended affidavit of contempt, alleging that Kelli was still refusing to make payments on the Sears and Sam's credit cards. Mark alleged he had made all the monthly payments on these cards since the final hearing in July, again to avoid negative implications on his credit score. The district court ordered Kelli to appear on March 1, 2021, and show cause as to why she should not be held in contempt. The case was also set for a review at this same time. The record does not reflect whether this review or hearing occurred, or the results of either.

On April 14, 2021, the district court issued a memorandum decree of divorce containing a final division of property. This decree stated:

> "[Kelli] is solely responsible for payment of the following debts and obligations, will defend [Mark] from these claims and liabilities, and will reimburse [Mark] for any and all expenses incurred either directly or indirectly, including a reasonable attorney's fee, if [Kelli] fails to pay these debts:
> "Debt on Toyota (4Runner) approximately $47,222.00
> "Sam's Club Card
> "Barclay Card approximately $25,358.00."

It also provided:

> "[Mark] is solely responsible for payment of the following debts and obligations, will defend [Kelli] from these claims and liabilities, and will reimburse [Kelli] for any

and all expenses incurred either directly or indirectly, including a reasonable attorney's fee, if [Mark] fails to pay these debts:

> . . . .
> "Sears Card $2,562.00."

The district court ordered Mark to pay Kelli $5,000 within six months as equalization, and neither spouse was granted spousal maintenance.

Three months later, Mark moved to offset the $5,000 he was ordered to pay Kelli against the credit card payments he had continued to pay due to Kelli's perpetual nonpayment. Mark alleged that he had made payments on the Sears and Sam's cards, and he had also paid off much of the Barclay card debt assigned to Kelli in the final divorce decree. Again, Mark claimed he made these payments because of the negative effect of Kelli's nonpayment on his credit score.

At the hearing on this motion, Mark testified he made payments on the Sam's and Sears cards "the whole time" the divorce was pending. He testified Kelli was paying on the Barclay card at one point, but then she stopped. No one was assigned responsibility for the Barclay card debt while the divorce was pending, but the district court assigned it to Kelli in the final decree. Mark started receiving aggressive collection calls from the Barclay card creditor, telling him he was the primary cardholder and needed to pay the debt regardless of any court order. He testified Kelli told "the Barclay lady that she would give them a dollar a month, she didn't care about [his] credit." He said before the divorce his credit score was in the 800s, but because of Kelli's nonpayment it dropped to the 500s.

Mark testified he paid $2,562 on the Sears card "while the case was pending" and $9,742 on the Sears card "afterwards." He explained the $2,562 he was ordered to pay on the Sears card in the final decree represented the amount he paid while the divorce was

4

pending, but the total debt had been $12,304, which he paid off after the final decree. He testified he paid $2,364.38 on the Sam's card and $13,750 on the Barclay's card. Mark said he had to pull money out of his 401(k) twice to make these payments. The first time he dipped into it, he paid off both the Sam's and Sears cards. When it became apparent that Kelli was not going to make payments on the Barclay's card, he pulled money out of it again to settle that debt with the creditor.

Mark asked the district court to reduce the $25,856 he paid on Kelli's obligations to a judgment. This included the $9,742 he paid on the Sears card, the $2,364.38 he paid on the Sam's card, and the $13,750 he paid on the Barclay's card. He asked the court to offset the $5,000 equalization payment he owed to Kelli against this amount, for a corrected judgment of $20,856 against her. He also claimed he would suffer taxable consequences for the forgiven Barclay card debt. Although he did not provide an amount for this loss, he asked the court to include this loss in the judgment against Kelli or reserve the issue for later determination. Last, he asked the court to find Kelli in contempt for her failure to make the payments as ordered in both the temporary orders and final decree. He requested sanctions for her contempt, to include $1,500 in attorney fees.

Kelli admitted she did not make any payments on the Sears and Sam's cards as ordered while the divorce was pending, nor did she make any payments on the Sears, Sam's, or Barclay cards after the final divorce decree. She testified she worked two jobs, but still could not afford the payments. She claimed she had suffered financial hardship because she missed several weeks of work for a surgery and again after she contracted COVID-19, and she was paying off hospital bills from her surgery. Kelli argued a finding of contempt was not warranted because she simply could not afford to make the payments and had not willfully failed to pay.

The district court granted Mark an offset of $5,000 against his equalization payment under the final decree but refused to enter a judgment against Kelli or find her in

5

contempt. It instead found Mark's payments on the cards were a "gift." The court explained that it understood there was "$25,000.00 [Mark] paid on debts that [Kelli] was supposed to pay under the order of the Court," but "the reality of it is [Mark] volunteered to make those payments."

The district court refused to find Kelli in indirect contempt but cautioned her that "[i]f you don't pay your 4Runner debt the way you are supposed to and they have to come back in again, I'm going to grant the attorney fees. I'm going to grant all the attorney fees. So be aware that I'm done with this."

Mark timely appealed.

ANALYSIS

*The district court erred in finding Mark's payments were a gift.*

On appeal, Mark first argues the district court's finding that his payments were a gift modified the division of debts laid out in the final divorce decree. He claims the district court lacked jurisdiction to modify the decree since no timely motion to alter or amend the judgment was filed. Kelli contends the district court did not modify the divorce decree since it did not characterize its finding as a modification.

After entering a decree which determines a division of property, a district court has no continuing jurisdiction and no power to modify the property division. *Drummond v. Drummond*, 209 Kan. 86, 90-91, 495 P.2d 994 (1972). Once the decree has become final and the time for appeal has lapsed, a court's jurisdiction is limited to enforcement or clarification of the terms pertaining to division of the marital estate. *In re Marriage of Nelson*, No. 102,574, 2010 WL 4977112, at *3 (Kan. App. 2010) (unpublished opinion).

6

See K.S.A. 2021 Supp. 60-259; but see also K.S.A. 2021 Supp. 60-260 (providing limited grounds for relief from a final judgment outside that time frame).

As another panel of this court recently noted: "The line between prohibited modification and permitted enforcement of a divorce decree is not always clear." *In re Marriage of Miller*, No. 123,003, 2021 WL 1936062, at *2 (Kan. App. 2021) (unpublished opinion), *rev. denied* 314 Kan. 855 (2022). In that case, Kristopher and Christina's divorce decree divided the couple's consolidated credit card debt between them. Christina failed to pay on her portion of the debt for over eight years. Kristopher paid both his and Christina's portion of the debt, including the interest that had accrued on both portions. Kristopher later moved the district court to order Christina to reimburse him for having paid her portion of the debt, with interest. The district court granted Kristopher's motion and awarded him the requested interest.

On appeal, a panel of this court upheld the district court's order, finding the district court had merely enforced the existing divorce decree rather than modify it. In reaching this conclusion, the panel focused on the fact that the district court did not disturb the overall debt distribution under the decree. Because the district court chose to assign the respective interest on the debt to each party based on the proportion of the debt the party was originally responsible for—keeping the original designated percentage of marital debt undisturbed—its actions were not a modification. *In re Marriage of Miller*, 2021 WL 1936062, at *2-3.

Here, in contrast, the district court effectively altered the debt distribution under the final divorce decree. Under the final decree, the court ordered Kelli to pay all the debt on the Barclay card, which was around $25,000, as well as the debt on the Sam's card. Mark testified that he settled and paid off the Barclay debt and he also paid off the Sam's card debt. By finding these payments were a gift and not requiring Kelli to reimburse Mark (as the final decree ordered her to do), the district court significantly altered the

division of debts under the divorce decree, effectively shifting this debt to Mark. As a result, this action was a modification of the decree, which the court had no jurisdiction to make.

Mark also claims on appeal that the district court erred in not entering a judgment against Kelli for the payments he made on her assigned debts. The language of the final divorce decree required Kelli to reimburse Mark "for any and all expenses incurred either directly or indirectly" if she failed to pay the debts on the Sam's card and the Barclay card. We find the court erred in not enforcing its prior order and not entering judgment against Kelli for Mark's payments on the Barclay and Sam's cards.

Unfortunately, we cannot address the amount of the judgment to which Mark is entitled based on the record before us. The final decree apparently did not address payment of the balance of the Sears card (which Mark testified was $9,742), nor does the record reflect how or whether the court adjudicated Mark's two motions for contempt for Kelli's nonpayment of the credit card debt while the divorce was pending. The final decree also does not state whether the court considered Mark's payment of these debts while the divorce was pending in its division of property. For these reasons, we reverse the district court's order and remand the matter with directions to determine the amount of judgment that should be entered for Mark against Kelli.

*The district court's findings on the contempt issue were confusing and incomplete.*

Mark also appeals the district court's decision not to find Kelli in contempt of court for nonpayment of the debts she was ordered to pay. We review this decision de novo. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002).

The procedure governing indirect contempt is found in K.S.A. 2021 Supp. 20-1204a, which is strictly construed against the moving party. *Alpha Med. Clinic v.*

*Anderson*, 280 Kan. 903, 926-27, 128 P.3d 364 (2006). Indirect contempt may be either criminal or civil. Civil contempt is failing to do something the court has ordered for the benefit of another party to the proceeding, and civil contempt proceedings are remedial. A party should not be punished for contempt for disobeying a court order if the order is capable of construction consistent with innocence. 280 Kan. at 927. Further, whether a particular act or omission is contemptuous depends on the nature of the act or omission as well as all surrounding circumstances, including the intent and good faith of the party charged with contempt. *In re Marriage of Brotherton*, 30 Kan. App. 2d 1298, 1302, 59 P.3d 1025 (2002).

Mark points out Kelli admitted she did not make the payments she was ordered to make under both the temporary orders and final decree. Kelli, in response, argues she provided sufficient excuses for her nonpayment to support the district court's ruling.

The district court's order does not explain why it did not find Kelli in contempt, nor can we determine whether this finding turns on its finding that Mark's payments of Kelli's assigned debts were a gift. The court found Kelli "failed and/or refused" to make the ordered payments and that she refused "to comply with the Order of the Court." While it could have excused her nonpayment and noncompliance based on her testimony at the hearing, it did not address that testimony or make any such findings in its order. And we find its determination that Mark's payments were a gift to be in error.

Because the district court's findings are confusing and incomplete and could have depended on an erroneous determination, we reverse its decision not to find Kelli in contempt and remand with directions to reconsider its ruling on the contempt issue.

Reversed and remanded with directions.

9