Thomas W. Groneman, Director
Alcoholic Beverage Control Division
Kansas Department of Revenue
915 SW Harrison Street, Rm. 214
Topeka, Kansas 66625-3512
Dear Director Groneman:
You request that we review Attorney General Opinion No. 80-52 and address its applicability to the issue of whether liquor licenses or temporary permits are required by sponsors of events for which attendees typically must purchase a ticket or pay an entry fee or cover charge to gain admission, and then may consume alcoholic beverages once inside the event facility. You provide two different scenarios for our consideration and suggest the answer differs in each.
Specifically, you suggest that sponsors of wine-tasting events held as charitable fund-raisers need to be licensed or hold temporary permits because tickets for the events usually are available to the general public and the ticket prices usually correlate closely to the value of the alcohol and other tangible benefits received by attendees. Accordingly, you believe a "sale" of alcoholic liquor occurs in these situations. On the other hand, you do not believe that a license or permit is required in order for hosts of political fund-raising events to serve attendees alcoholic beverages, because invitations to the events generally are limited to those of the same political party and the required or suggested contribution to attend the events typically bears no direct relationship to the value of the food and drink provided. Therefore, you believe no "sale" of alcoholic liquor occurs in these scenarios.
Attorney General Opinion No. 80-52 has no real bearing on the questions at hand. That opinion pertained exclusively to cereal malt beverages,([1]) rather than alcoholic liquor.([2]) While the distinction may be little more than a legal fiction, cereal malt beverages are subject to a different set of laws than alcoholic liquor.([3]) Kansas is one of very few states to currently make this distinction, but as the first state to enact prohibition([4]) and one of the last to repeal it,([5]) the state has a long history of prohibition-based liquor laws and of distinguishing between alcoholic liquor and cereal malt beverages.([6])
"The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained."([7]) "[I]n construing statutes and determining legislative intent, several provisions of an act or acts, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible."([8])
The Kansas liquor laws generally must be read narrowly; what is not specifically authorized is prohibited. "No person shall manufacture, bottle, blend, sell, barter, transport, deliver, furnish or possess any alcoholic liquor for beverage purposes, except as specifically provided in [the Liquor Control] act. . . ."([9])
The first crucial determination to be made is whether a "sale" occurs in fund-raising event situations where those to whom alcoholic liquor is provided must first purchase a ticket or pay an entry fee or cover charge in order to enter the event and obtain the beverage. "Sale," as defined in the Liquor Control Act,([10]) "means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration and includes all sales made by any person, whether principal, proprietor, agent, servant or employee."([11]) "To sell" alcoholic liquor "includes to solicit or receive an order for, to keep or expose for sale and to keep with intent to sell."([12])
Essentially, a "sale" of alcoholic liquor occurs whenever a person's conveyance of any consideration results in the person being provided alcoholic liquor. Therefore, in the situations you describe, where purchase of a ticket or payment of an entry fee or cover charge results in one being provided alcoholic liquor, sales of alcoholic liquor occur. Granted, we recognize that not every person purchasing a ticket or paying an entry fee or cover charge to enter such events then, in turn, accepts the alcoholic liquor made available in exchange for the consideration conveyed. Nonetheless, to the extent only those who have paid to enter are offered alcoholic liquor and some attendees do accept the beverages offered, at least some sales occur.
The next determination that must be made, then, is whether such sales are allowed on premises not licensed pursuant to the Club and Drinking Establishment Act,([13]) which generally regulates sales of alcoholic liquor by the drink. K.S.A. 2005 Supp. 41-719([14]) in subparagraph (b) addresses the issue of where alcoholic liquor can beconsumed, and it generally prohibits consumption on private property but provides the following exceptions:
 "(1) On premises where the sale of liquor by the individual drink is authorized by the club and drinking establishment act;
 "(2) upon private property by a person occupying such property as an owner or lessee of an owner and by the guests of such person, if no charge is made for the serving or mixing of any drink or drinks of alcoholic liquor or for any substance mixed with any alcoholic liquor and if no sale of alcoholic liquor in violation of K.S.A. 41-803, and amendments thereto, takes place;
 "(3) in a lodging room of any hotel, motel or boarding house by the person occupying such room and by the guests of such person, if no charge is made for the serving or mixing of any drink or drinks of alcoholic liquor or for any substance mixed with any alcoholic liquor and if no sale of alcoholic liquor in violation of K.S.A. 41-803, and amendments thereto, takes place;
 "(4) in a private dining room of a hotel, motel or restaurant, if the dining room is rented or made available on a special occasion to an individual or organization for a private party and if no sale of alcoholic liquor in violation of K.S.A. 41-803, and amendments thereto, takes place; or
 "(5) on the premises of a microbrewery or farm winery, if authorized by K.S.A. 41-308a or 41-308b, and amendments thereto."
We do not believe the kinds of events about which you inquire could be held on unlicensed private property pursuant to subparagraph (b)(2) of this statute, because that provision permits consumption on private property only by the "owner or lessee . . . and by the guests of such person, if no charge is made for the serving or mixing of anydrink. . . ."([15]) The situations you describe would entail charges being made in the form of a required ticket purchase, entry fee or cover charge, and therefore they would conflict with this provision. In addition, we previously have opined that the term "guest" as used in K.S.A. 41-719(b)(2) means "a person to whom a private or personal invitation, as opposed to a public announcement, has been extended for hospitality or entertainment."([16]) Your description of the fund-raising events at issue indicates that invitations typically are made to the general public or members of a political party as a whole, rather than the private or personal invitations that would result in attendees being considered "guests" pursuant to this provision.
We do not believe the events could be held on the premises described in subparagraphs (b)(3) or (4) of the statute either, assuming the premises were unlicensed, because those provisions specifically disallow any "sale of alcoholic liquor in violation of K.S.A. 41-803, and amendments thereto." K.S.A. 41-803, in turn, makes open saloons illegal in Kansas. By definition, an "open saloon" includes "any place, public or private, where alcoholic liquor is sold or offered or kept for sale by the drink or in any quantity of less than 100 milliliters (3.4 fluid ounces) or sold or offered or kept for sale for consumption on the premises where sold, but does not include any premises where the sale of liquor is authorized by the club and drinking establishment act or, on and after January 1, 1988, any microbrewery or farm winery, if authorized by K.S.A. 41-308a or K.S.A. 41-308b, and amendments thereto."([17])
Essentially, consumption of alcoholic liquor is allowed on unlicensed, private premises — by an owner or lessee of the property and guests thereof — only when no charge is made for entry to the premises or for the individual drinks served.([18]) Sales of liquor by the drink without a license or temporary permit are prohibited.([19]) Therefore it follows that for "sales" of alcoholic liquor to be made in connection with fund-raising events such as you describe, the premises on which such events are held must be liquor-licensed or temporary-permitted premises.
Holding such events on premises subject to a club, drinking establishment or caterer license or a temporary permit, however, still may not be sufficient to avoid violation of the liquor laws. Premises subject to such licenses or permits must comply with all other applicable provisions of the Act.([20]) This may be problematic because, for instance, the Act prohibits any licensee from "sell[ing], offer[ing] to sell or serv[ing] to any person an unlimited number of drinks during any set period of time for a fixed price, except at private functions not open to the general public or to the general membership of a club."([21]) Arguably, an event open to anyone who purchases a ticket or pays a cover charge or entry fee is "open to the general public." Therefore, offering an unlimited number of drinks to such persons for a set price would violate K.S.A. 41-2640(a)(3).
Yet offering a set number of drinks — i.e. by providing those who purchase a ticket to enter a wine-tasting fund-raising event a limited number of "drink tickets" they can exchange for samples of various wines — also could run afoul of the Club and Drinking Establishment Act. Those licensed pursuant to the Act are also prohibited from "sell[ing], offer[ing] to sell or serv[ing] any drink to any person at any time at a price less than that charged all other purchasers of drinks on that day."([22]) Accordingly, if a liquor-licensed establishment at which a fund-raising event was held also was open to the general public — either in another portion of the licensed premises or during another portion of the same day — and it offered individual servings of the same products served during the fund-raising event, it would have to sell those servings for a commensurate price.
Notably, there is no Kansas liquor license or permit type that quite "fits" the kinds of events about which you inquire. Some other states have dealt with this issue by creating new liquor license or permit types specifically geared toward fund-raising events at which alcoholic beverages are served,([23]) and the same approach might be useful in ensuring appropriate regulation of such events in Kansas, too.
In summary, we believe that where a ticket must be purchased or an entry fee or cover charge paid by those seeking entry to an event and alcoholic liquor is then served to attendees of the event, a "sale" of alcoholic liquor occurs, and this is legal only if on property that is subject to a liquor license or a temporary permit.
Sincerely,
PAUL MORRISON
Attorney General
Laura M. Graham
Assistant Attorney General
PM: JLM: LMG: jm
[1] "Cereal malt beverage" is defined as "any fermented but undistilled liquor brewed or made from malt or from a mixture of malt or malt substitute, but does not include any such liquor which is more than 3.2% alcohol by weight." K.S.A. 41-2701(a).
[2] "Alcoholic liquor" is defined as "alcohol, spirits, wine, beer and every liquid or solid, patented or not, containing alcohol, spirits, wine or beer and capable of being consumed as a beverage by a human being, but shall not include any cereal malt beverage." K.S.A.41-102(b).
[3] See K.S.A. 41-2701 et seq. (the cereal malt beverage laws); K.S.A.41-101 et seq. (the Kansas Liquor Control Act); and K.S.A. 41-2601et seq. (the Kansas Club and Drinking Establishment Act).
[4] L. 1879, Ch. 165, § 1; see also Kenneth J. Peak Patricia A. Peak, Kansas Temperance: Much Ado About Booze 21 (2000), and Robert Smith Bader, Prohibition in Kansas 62 (1986).
[5] L. 1947, Ch. 248, § 1; see also David E. Kyvig, Repealing National Prohibition 188 (2nd Ed. 2000).
[6] For an in-depth discussion of the history of Kansas liquor laws,see Clark, Wyatt Earp and the Winelist: Is a Restaurant an "OpenSaloon?: 47 J.K.B.A. 63 (Summer 1978).
[7] Jones v. Kansas State Univ., 279 Kan. 128, 145 (2005).
[8] State ex rel. Morrison v. Oshman Sporting Goods Co., 275 Kan. 763,768 (2003).
[9] K.S.A. 41-104.
[10] K.S.A. 41-101 et seq.
[11] K.S.A. 41-102(w).
[12] K.S.A. 41-102(aa).
[13] K.S.A. 41-2601 et seq.
[14] As amended by L. 2006, Ch. 206, § 1.
[15] Emphasis added.
[16] Kansas Attorney General Opinion 93-35.
[17] K.S.A. 41-803(a) and (b).
[18] We do not believe a reception for a political candidate — at which some attendees incidentally make unsolicited contributions to the candidate's campaign fund — requires the host to hold a liquor license or temporary permit, notwithstanding the provision of alcoholic liquor by the drink to attendees, as long as: the event is held on private property of which the host is an owner or lessee; no ticket purchase or payment of an entry fee or cover charge is required to gain entry to the event; and attendees consist only of persons to whom the host has extended a private or personal invitation. However, where an event is promoted as a fund-raiser with an identified "contribution" amount — i.e. "$50 per person" or "$100 per plate" — in order to attend, a liquor license or permit would be necessary in order to serve alcoholic liquor.
[19] K.S.A. 41-2620.
[20] See, e.g., K.S.A. 41-2637 and 41-2641 (class A and class B club licenses, respectively); K.S.A. 41-2642 (drinking establishment licenses); K.S.A. 41-2643 (caterers licenses); and K.S.A. 41-2645
(temporary permits).
[21] K.S.A. 41-2640(a)(3).
[22] K.S.A. 41-2640(a)(4).
[23] See, e.g., Ohio Revised Code 4303.206(C), which expressly allows the holder of a special permit issued to nonprofit organizations to "charge an admission price to attend the event for which the permit is issued, which price includes the consumption of wine or sale of wine by the individual drink."