NOT DESIGNATED FOR PUBLICATION

No. 117,410

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DAVID M. TRASTER,
*Appellee*,

and

DEBRA C. TRASTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed April 27, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Stephen P. Weir*, of Stephen P. Weir, P.A., of Topeka, for appellant.

*Gary L. Ayers*, of Foulston Siefkin LLP, of Wichita, and *Anne E. Burke*, Burke McClasky Stevens, of Overland Park, for appellee.

Before STANDRIDGE, P.J., HILL and BUSER, JJ.

PER CURIAM: This is the second time David and Debra Traster's divorce has come before this court. In the original divorce action, Debra sought to enforce the parties' 2004 "Post-Nupt[i]al Agreement Dissolution of the Marriage," which provided for an unequal distribution of the parties' assets favoring Debra. The district court held that the agreement was void on public policy grounds. Construing it as a separation agreement, the court further found the agreement unfairly and inequitably divided the property. As such, the court allocated the couple's assets under K.S.A. 60-1610(b)(1) as if no

1

separation agreement existed. On appeal, a panel of this court reversed, finding the agreement was consistent with public policy and should be enforced as written. Significantly, the panel's finding that the agreement should be enforced as written resulted from an analysis of the agreement as a postmarital contract that was not subject to the fair and equitable requirements of a separation agreement under K.S.A. 60-1610(b)(3). *In re Marriage of Traster*, 48 Kan. App. 2d 356, 381-82, 291 P.3d 494 (2012), *rev. granted* 298 Kan. 1202 (2013) (*Traster I*). David appealed, and the Kansas Supreme Court granted review.

The Supreme Court affirmed our decision finding the agreement was not void on public policy grounds. Contrary to our finding, however, the Supreme Court held the postmarital contract must be construed as a separation agreement controlled by K.S.A. 60-1610(b)(3), which requires the district court to incorporate the agreement into the divorce decree if it finds the agreement is "valid, just and equitable." *In re Marriage of Traster*, 301 Kan. 88, 90, 339 P.3d 778 (2014) (*Traster II*). The *Traster II* court ultimately remanded the case to the district court "for a more detailed review into whether the agreement is just and equitable under K.S.A. 60-1610(b)(3)," given the considerations in the parties' agreement and circumstances of the case. 301 Kan. at 91.

On remand, the district court determined the agreement as written was not just and equitable. The court found the division of property and the award of spousal maintenance set forth in its original order dated October 27, 2010, was fair, just, and equitable. Debra again appeals, arguing that the district court did not properly comply with the Supreme Court mandate and that David owes her attorney fees under the terms of the agreement.

2

The facts of this case have been fully set forth in *Traster I* and *Traster II*. A highly summarized statement of the facts follows, highlighting the contested portions of the agreement relevant to this appeal.

During David and Debra's marriage, they entered into a 2004 postnuptial agreement stipulating to an unequal division of their assets upon divorce. Specifically, the agreement provided that, upon divorce, David would receive his personal belongings and effects, which were limited to his clothes, tools, and all but one of his guns. Under the agreement, Debra was entitled to each and every other asset owned by the couple upon divorce, whether held individually or together. The agreement contained an indemnity provision, stating that each of the parties "agrees to indemnify the other for any loss, cost or expense (including attorney fees and expenses) incurred because a Party seeks to obtain judicial modification of this Agreement." The agreement also included a severability provision, stating that if "one or more provisions of this Agreement shall be held invalid or unenforceable such invalidity or unenforceability shall not affect the remaining provisions and [they] shall nevertheless be valid and enforceable."

The agreement identified David as the individual who drafted the document and noted that Debra relied on his legal expertise in him doing so. The agreement expressly stated that it is "fair, just and reasonable, and comports with all legal requirements so as to be fully enforceable under the laws of the State of Kansas." By the terms of the agreement, it became effective upon David's December 2004 signature.

On June 20, 2007, David filed a petition for divorce. In his petition, David advised the court that the parties had accumulated certain property and debts during the marriage and that he was seeking a just and equitable division of those assets and debts. David omitted any reference to the postnuptial agreement in his petition for divorce and—

3

notwithstanding the terms of the agreement he drafted and executed during the marriage—affirmatively requested "an equitable division of the property and debts" in his prayer for relief.

In her answer, Debra asked the court to divide the property in accordance with the 2004 postnuptial agreement and requested an award of spousal maintenance. Debra later moved for partial summary judgment, asking the court to find as a matter of law that the postnuptial agreement was valid and enforceable and that it controlled the disposition of any and all of the parties' real and personal property. Debra also requested attorney fees and costs, as contemplated by the indemnification provision in the postnuptial agreement. David opposed the motion, arguing the district court was required to make a determination under K.S.A. 60-1610(b)(3) that the postnuptial agreement was "valid, just and equitable" before the court could incorporate the agreement into a final divorce decree and the agreement signed by the parties was neither just nor equitable in the distribution of assets. David also claimed the postnuptial agreement was invalid because it ran counter to public policy by promoting and encouraging divorce.

In resolving the motion, the district court determined the postnuptial agreement was drafted and executed in contemplation of divorce and, therefore, qualified as a separation agreement under K.S.A. 60-1610(b)(3), subject to review by the court to determine if it was valid, fair, and equitable. In order to make such a determination, the court scheduled an evidentiary hearing to identify and consider the value of the parties' assets that were subject to distribution under the separation agreement. The evidentiary hearing lasted three days, from October 27 to October 29, 2010. After taking the matter under advisement, the court entered an order on January 3, 2011, in which it held the separation agreement was unjust and inequitable because enforcing it would result in a disproportionate share of the property being distributed to Debra. In addition, the court held the separation agreement was invalid because it ran counter to public policy by promoting and encouraging divorce. After finding the separation agreement inequitable

4

and against public policy, the district court divided the property in a manner it deemed fair and equitable using the factors set forth in K.S.A. 60-1610(b)(1). The court granted Debra's request for spousal maintenance for 120 months but denied her request for attorney fees. Finally, the district court denied Debra's motion to alter or amend the judgment as it related to the separation agreement and attorney fees.

Debra appealed, arguing the postnuptial agreement was not a separation agreement subject to K.S.A. 60-1610(b)(3). On appeal, a panel of this court agreed with Debra and analyzed the agreement using common-law contract principles instead of using the fair and equitable factors for separation agreements as set forth in K.S.A. 60-1610(b)(3). *Traster I*, 48 Kan. App. 2d at 373-80. This court reversed the district court's holding that the agreement was void as against public policy and remanded to the district court to fully enforce the contract as written, including awarding Debra attorney fees under the indemnity provision, and to do so under common-law contract principles without regard to whether the agreement was fair and equitable. 48 Kan. App. 2d at 380-81.

This time David appealed. The Supreme Court granted review to determine whether the agreement was void as against public policy, whether the agreement was subject to K.S.A. 60-1610(b)(3) governing separation agreements or common-law contract principles, and, if it was subject to K.S.A. 60-1610(b)(3), whether the district court erred in finding the agreement was not "just and equitable."

Regarding the first inquiry, the Supreme Court held the agreement was valid and consistent with public policy. Regarding the second inquiry, the Supreme Court construed the postnuptial contract as a separation agreement governed by K.S.A. 60-1610(b)(3), which requires the district court to find the terms of the agreement are just and equitable. *Traster, II*, 301 Kan. at 108. Although the district court made a determination that the agreement in this case was inequitable under K.S.A. 60-1610(b)(3), the Supreme Court further held, however, that the district court's

5

determination "was guided by several errors of law and suffers from an insufficient factual analysis to permit adequate appellate review." 301 Kan. at 109. For this reason, the Supreme Court remanded the case to the district court, giving it specific instructions to make the "just and equitable" determination. 301 Kan. at 111. The Supreme Court noted that the district court's decision on remand may require reconsideration of whether Debra is entitled to attorney fees under the agreement's indemnity provision. 301 Kan. at 112.

On August 4, 2015, the district court held a hearing to review the mandate. In an order dated December 8, 2015, the court determined the agreement was "not fair, just and equitable" and reinstated its prior order dividing the property and providing maintenance. On November 4, 2015, the district court held a separate hearing to consider Debra's request for attorney fees. At the end of that hearing, the court asked the parties to submit proposed findings of fact and conclusions of law regarding the attorney fees issue.

On February 10, 2017, the court issued its final order on remand. The court incorporated its December 2015 order, which held that the agreement was not "fair, just and reasonable," and its January 2011 order, in which the court divided the parties' assets under K.S.A. 60-1610(b)(1). The final order reiterated that the district court gave "careful consideration" to the factors listed by the Supreme Court. The order also denied Debra's request for attorney fees under the agreement and refused to sever and separately enforce the indemnity clause. Debra appeals.

ANALYSIS

We begin our analysis by identifying the issues presented by Debra on appeal. Although Debra states in her brief that there are five issues to be decided on appeal, her issues generally can be framed as two distinct arguments. First, Debra argues that the district court failed to comply with the Supreme Court's mandate on remand. Specifically,

6

she claims the district court failed to fully recite the factors and particular circumstances it considered to determine the agreement was unjust and inequitable and further failed to explain how those factors and circumstances prevailed over the general rule that valid agreements should be upheld and liberally interpreted to carry out the parties' intentions. Given the court's failures in this regard, Debra asserts the matter ought to be remanded for the district court to enforce the agreement as written. In her second argument, Debra claims that even if the district court's decision finding the agreement unfair and inequitable is supported by sufficient facts, the district court erred in failing to sever the indemnity clause of the agreement and award her attorney fees.

In addition to the issues presented, we also find it helpful in this particular case to identify the issues that are *not* presented on appeal. Although Debra claims the district court's analysis lacks the factual findings to support the district court's legal conclusion that the agreement is unjust and inequitable and thus the matter should be remanded to enforce the agreement as written, she does not challenge as unfair or inequitable the district court's subsequent order dividing the property between the parties and providing her maintenance. That the district court's ultimate order as it pertains to dividing property and granting maintenance is not an issue in this appeal is important because, as explained in detail below, we conclude the district court complied with the Supreme Court's mandate by making factual findings, supported by substantial competent evidence, that were sufficient to support the district court's conclusions of law. Based on our conclusion, the district court's order dividing the property and providing Debra maintenance is not at issue on appeal. The only other remaining issue on appeal is whether the district court erred in failing to sever the indemnity clause of the agreement to award Debra's attorney fees.

A. *Complying with the mandate*

Debra contends the district court did not follow the Supreme Court's mandate on remand because it failed to explain why the parties' agreement cannot be honored in light of the general rule that marital agreements are to be upheld and liberally interpreted to carry out the makers' intentions.

"Interpretation of an appellate court mandate and the determination of whether the district court complied with it on remand are both questions of law subject to de novo review. [Citation omitted.]" *State v. Morningstar*, 299 Kan. 1236, 1240-41, 329 P.3d 1093 (2014); see *In re Estate of Einsel*, 304 Kan. 567, 584, 374 P.3d 612 (2016); *State v. Guder*, 293 Kan. 763, 765, 267 P.3d 751 (2012).

The mandate and opinion from an appellate court "shall be controlling in the conduct of any further proceedings necessary in the district court." K.S.A. 60-2106(c).

> "It is axiomatic that on remand for further proceedings after a decision by an appellate court, the district court must proceed in accordance with the appellate court mandate. The district court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces, and it has no authority to consider matters outside the mandate." *Gannon v. State*, 303 Kan. 682, Syl. ¶ 2, 368 P.3d 1024 (2016).

See also *In re Estate of Einsel*, 304 Kan. at 584 (district court must carry out mandate and "'cannot vary it, or examine it for any other purpose than execution; nor give any other future relief; nor review it upon any matter decided on appeal, for error apparent; nor intermeddle with it, further than to settle so much as has been remanded'").

8

The Supreme Court remanded this case to the district court with specific instructions to aid its consideration of whether the agreement was just and equitable under K.S.A. 60-1610(b)(3). The Supreme Court's opinion stated in relevant part:

"The district court focused only on the present day property division and gave no stated consideration to the Trasters' explicit reasons for that division, *i.e.*, Debra's parents being the source of the assets, Debra's medical circumstances, and the financial impact on Debra if she and David divorced. One important consideration would have been whether the reasons David and Debra gave for the one-sided property division were factually based at the time they were recited in the separation agreement; and, if so, what would be wrong with honoring those stated justifications. Similarly, the district court gave no apparent thought to the fact that these terms were voluntarily entered into or to the Trasters' express agreement that this asset division was 'fair, just and reasonable' and comported 'with all legal requirements so as to be fully enforceable under the laws of the State of Kansas.' These considerations are important in light of our state's general rule that marital agreements are to be upheld and liberally interpreted to carry out the makers' intentions when there is a lack of fraud, no overreaching, and no other public policy impediment.

"Under K.S.A. 60-1610(b)(3), the district court's task may be a complicated one to be sure. But it cannot accomplish that task without noting the circumstances important to its analysis and clearly explaining what factors may override the general rule and stating why. In this case, the district court made only general observations relating to the statute's just and equitable prong. . . . Put simply, more is required from the district court if it is to conclude under these particular circumstances that the Trasters' agreement cannot be enforced in light of the parties' freedom of contract and the general rule that such agreements should be honored.

. . . .

". . . [T]he district court needed to explain why David and Debra could not agree to the property division at issue for the reasons they explicitly embraced. As this court has previously stated, a property division need not be equal to be just and reasonable.

"That said, these concerns are not meant to convey that the agreement is just and equitable simply because it claims to be. What is required is a careful and full recitation of the facts and particular circumstances that justify the district court's conclusions that

9

the parties' intentions cannot be honored. This will in turn make those conclusions amenable to appellate review.

"Having determined that the Trasters' 2004 agreement is not void as against public policy, we further conclude that the district court must do a more thorough analysis that explicitly weighs all of these considerations before it may determine that agreement is not just and equitable under K.S.A. 60-1610(b)(3). We remand the case for that purpose and whatever additional determinations that must be made once that task is completed. [Citations omitted.]" *Traster II*, 301 Kan. at 109-11.

On remand, the district court held a hearing to review the directives set forth in the mandate. At the August 4, 2015 review hearing, the court set forth its understanding of what was required to satisfy the mandate issued by the Supreme Court:

"[THE COURT:] . . . The opinion indicates that I needed to provide, quote, a more careful and full recitation of the facts and particular circumstances that justified the district court's conclusions that the parties' intentions cannot be honored. . . .

". . . [H]ere's what my concern is, and Mr. Pate [Debra's counsel], to be honest with you, I'm directing it more at your client. In my order—well, in awarding spousal maintenance I specifically identified, on page 16F, number 73, page 16, and it was under F, the current future financial need of the respondent and the ability of the petitioner to pay the spousal maintenance. If I were to modify the property division and potentially order . . . attorneys' fees, that would affect the spousal maintenance as well, potentially at least. And I just—I want to make sure your client's aware of that before I move forward with this. And specifically, I indicated that on the record, if I recall right, at the conclusion of the—of my ruling. I also, in dividing the personal property the way that I did, on page 11, again under F, I identified that the reason I divided the personal property the way I did is because I was providing for the allowance of maintenance.

"Now, if—and again, I'm okay with reworking this and looking at it, at least. I'm not saying I will modify it. I'm not saying I won't. I'm just—I just want to be—I want you to be aware that maintenance has to be on the table as well, because it was a factor that I considered in making the determination that I did to find that it was fair, just and equitable. So I'm just trying to make sure that I don't do something that your client ultimately regrets. . . .

10

"The other factor that I think is important to note, and I recognize that the Supreme Court has kind of looked at the four corners of the document, and they say four corners of the document are controlling. Well, the four corners of the document in a separation agreement typically would deal with not only property but spousal maintenance. In this case there was no mention of spousal maintenance, and I have to at least consider the fact that—the fact that there was no spousal maintenance agreed to by the parties, could be considered or at least may be considered as the intention of the parties not to award spousal maintenance, in light of the huge disparity in personal property division. . . .

". . . I have to go back and reread the transcript, review all of my notes and see where I'm at on this to see whether I got it right the first time.

. . . .

". . . [The Supreme Court] said that . . . the district court gave no apparent thought to the fact that these terms were voluntarily entered into or to the Trasters' express agreement that the asset division was fair, just and reasonable and comported with all legal requirements as to be fully enforceable under the laws of the State of Kansas. That's page 30 of the opinion they sent out to me. I haven't looked it up. But that's not true. I did consider it. I just didn't identify it, and I recognize that because I didn't identify it [the Supreme Court] could draw that conclusion. So I'm not critical of it, but I did obviously consider it, and it was something that was clearly put forth by his attorney at the time.

. . . .

". . . [And] Justice Rosen's dissent that said that—I think he was quoting from the Court of Appeals, where he indicated that Debra would have a limited ability to gain— excuse me, to obtain gainful employment and those Social Security benefits. Again, I'm not looking at the law, I'm not doing extra research outside the law. But having practiced in this area for over 20 years, that's not a correct recitation of my understanding of the Social Security benefit law. . . .

"The way the old Social Security benefit rule worked for married couples divorced is if they had been married approximately ten years, then they could draw off of the other full-time employer or full-time wage earner. But that may not be the law anymore, but that's something we may have to have evidence on as well, depending on now if social—if spousal maintenance becomes an issue. . . .

"In any event, I guess the next step would be, Mr. Pate, I need to know from you, with the understanding that I may have to relook at spousal maintenance, whether your client wants me to go forward with a modification of the property, because I've clearly considered spousal maintenance in making my determination of property. And obviously that will—[David's] potential payment of attorneys' fees will affect his ability to pay. And quite frankly, it was a factor I considered in awarding [Debra's] spousal maintenance that she would have to pay the attorneys' fees. . . .

"MR. PATE: Well, Your Honor, I know she reported to the hospital for surgery, I think either yesterday or Friday. I'm not sure what the status of that is. I'll just have to discuss that with her and with the appellate attorney that's on the case and see what she wants to do. I don't know when she's going to get out of the hospital or when she'll be available to talk to me. I know that I'm going to be out of town for basically tomorrow morning through Sunday night. So optimistically, it would probably be next week before I could have that conversation. So I can probably let the Court know something next—by the end of next week.

. . . .

"[THE COURT:] . . . Ms. Simpson [David's counsel], I directed [these remarks to Debra's counsel]. Do you have any thoughts on it?

"MS. SIMPSON: My only thought is this isn't a surprise to me that this has to be considered and factored in, in you rendering a new decision based on the Supreme Court ruling. And Mr. Pate and I have talked about it, that spousal maintenance was certainly going to end up being a part of this review.

. . . .

"THE COURT: Okay. All right. Well, let me know how you want me to proceed, Mr. Pate."

On December 8, 2015, the district court issued its first order on remand. The court began by adopting all findings in its opinion of January 2011 to the extent that they were not inconsistent with its current order. The court also made additional findings regarding the division of property and maintenance as required by the Supreme Court's mandate. Based on these findings, the court ultimately decided the separation agreement was not fair and equitable. This court reviews the district court's decision for an abuse of discretion.

12

> "'When a separation agreement is submitted for court approval, the trial judge is given broad discretion to determine its fairness. Thus, we review the fairness decision for abuse of discretion.' [Citations omitted.]" *Traster II*, 301 Kan. at 109.

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party asserting an abuse of discretion bears the burden of showing such an abuse of discretion. *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009).

Here, David and Debra agreed to a very specific and an extraordinarily one-sided property division, stated the reasons supporting their agreement, and expressed that the agreement was fair, just, and equitable.

> "6. DISTRIBUTION OF ASSETS. It is acknowledged and agreed that all or nearly all of the accumulated Assets of the Parties have been contributed directly or indirectly to the marriage by . . . Debra's parents. As an example, and without limitation, Debra's parents have given educational support and vehicles at prices substantially below market value or as outright gifts. The Assets contributed by David's career and employment have been used by the Parties for maintenance of their lifestyle. For this reason, and because Debra will have no Social Security Benefits and, because of her age will have limited ability to obtain gainful employment in the event of a voluntary dissolution of the marriage by either party, and in the absence of any other agreement between the Parties executed with the same formality as this Agreement and which is in compliance with Paragraph 9. H, below, the Assets of the Parties should be and are to be divided and distributed between them as follows:
>
> > A. ***To David:*** His personal belongings and effects, including his clothing, tools and guns, (Debra may elect to retain one of the Parties handguns of her choice.) and gifts and inheritances, if any, from David's family. As of the date of this agreement, there have been no such gifts or inheritances.

13

B. ***To Debra:*** All other Assets, both real[,] personal and mixed which are owned by the Parties at the time any proceeding for dissolution of the marriage are instituted by either Party, including but not limited to, the Parties' home, vehicles, personal property, accounts, funds, stocks, bonds, investments, buildings, contracts, leases, and any other Assets owned by the Parties. This grant shall apply to all Assets, whether or not enumerated herein and to all Assets regardless of when they are or were acquired by the Parties, including after acquired property."

On remand, the district court found the division of property as contemplated by the parties in the agreement was not fair, just, or equitable. In support of its finding, the court held (1) significant facts upon which David and Debra relied in agreeing to divide the property the way they did were inaccurate and (2) notwithstanding the fact that several of the assets allocated to Debra in the property division agreement were income producing, the parties' failure to include a provision granting Debra spousal maintenance rendered the agreement unfair, unjust, and inequitable to Debra.

1. *Inaccurate factual basis*

The court found the following substantive reasons given by David and Debra to support the one-sided property division were not supported by the facts in the record:

- The assets accumulated by the couple have been accumulated largely because of loans, gifts, and payments from Debra's parents.
- All or nearly all of the accumulated assets of the parties have been contributed directly or indirectly to the marriage by Debra's parents.
- The assets contributed by David's career and employment have been used by the parties for the maintenance of their lifestyle.
- Debra will have no Social Security benefits.

14

With regard to the first three statements above, the district court found

"8.   While both parties acknowledged that significant assets were acquired by the parties thorough Debra's family connection, the post nuptial agreement alludes to 'assets contributed by David's career and employment'. Those assets, while minimized in the post nuptial, were in reality significant contributions to the parties' wealth and allowed the parties to obtain assets and retain the significant assets that were accumulated from Debra's family connections. Those contributions from David, included but were not limited to, a regular income that provided for the daily living expenses of the parties, personal property and bank accounts as well as retirement accounts through Foulston Siefkin. David continued to provide for the family unit up to, and through the divorce.

"9.   While Petitioner downplayed his role in providing for the family through the twenty plus years of marriage, it was apparent to the Court that David was significant in providing monetarily for the parties during the time of the marriage."

The court's findings are supported by substantial competent evidence. The record reflects that David earned approximately $2,085,279.81 in gross income from May 1981 through May 2007, and his after tax income exceeded $1.5 million. The record also reflects that Debra's parents directly or indirectly provided to Debra and David $719,150.67 in cash, before taxes. Granted, the $719,150.67 in cash does not include any tangible personal property provided to the couple by Debra's parents (e.g., inherited household furniture, vehicles at prices substantially below market value or as outright gifts, etc.). Yet, even generous gifts of tangible personal property do not change the fact that David contributed almost three times more money than Debra's parents over the course of the marriage. Thus, substantial competent evidence supports the district court's finding that the statements regarding financial contributions to the marriage were inaccurate.

The district court also found inaccurate that part of the agreement stating Debra would not be eligible to receive Social Security benefits:

15

"6. At the time the parties entered into that post nuptial agreement, David and Debra had been married 28 years, well in excess of the 10 years that Social Security requires to permit the divorced spouse to draw off of the earnings of his or her ex-spouse.

"7. According to Federal law, if Debra remains unmarried, she will be eligible to receive social security benefits based on David's work history when she reached the age of 62 or older."

Substantial competent evidence supports the district court's finding in this regard. The Internet citation Debra cited in her brief establishes that Debra is entitled to Social Security retirement benefits based on David's employment history so long as she is unmarried, age 62 or older, and David is entitled Social Security retirement or disability benefits. See https://www.ssa.gov/planners/retire/divspouse.html. It appears from the record that Debra remains unmarried and both she and David turned 62 years of age while this appeal was pending. That David's income is likely to exceed $16,920 per year is not a limitation on Debra's ability to obtain Social Security benefits. Relevant portions of 20 C.F.R. § 404 (2017) provide as follows:

"**§404.331 Who is entitled to wife's or husband's benefits as a divorced spouse.**
    "You are entitled to . . . benefits as the divorced wife . . . of an insured person . . . even though the insured person is not yet entitled to benefits, if the insured person is at least age 62 and if you meet the requirements of paragraphs (a) through (f). The requirements are that—
    "(a) You are the insured's divorced wife . . . and—
    (1) You were validly married to the insured under State law . . . and
    (2) You were married to the insured for at least 10 years immediately before your divorce became final;
    "(b) You apply;
    "(c) You are not married. . . .
    "(d) You are age 62 or older throughout a month in which all other conditions of entitlement are met; and

16

"(e) You are not entitled to an old-age or disability benefit based upon a primary insurance amount that is equal to or larger than the full wife's . . . benefit.

"(f) You have been divorced from the insured person for at least 2 years."

**"§ 404.333 Wife's and husband's benefit amounts.**

"Your wife's . . . monthly benefit is equal to one-half the insured person's primary insurance amount. If you are entitled as a divorced wife . . . before the insured person becomes entitled, we will compute the primary insurance amount as if he . . . became entitled to old-age benefits in the first month you are entitled as a divorced wife . . . . The amount of your monthly benefit may change as explained in § 404.304."

**"§ 404.415 Deductions because of excess earnings.**

". . . . (b) *Deductions from . . . wife's . . . benefits because of excess earnings of the insured individual*. We will reduce . . . wife's . . . insurance benefits payable . . . on the insured individual's earnings record because of the excess earnings of the insured individual. *However, beginning with January 1985, we will not reduce the benefits payable to a divorced wife . . . who has been divorced from the insured individual for at least 2 years.*"

**"§ 404.417 Deductions because of non-covered remunerative activity outside the United States; 45 hour and 7-day work test.**

". . . . (b) *Deductions from benefits because of the earnings or work of an insured individual—*

. . . .

(4) *From January 1985 on. Effective January 1985, no deduction will be made from the benefits payable to a divorced wife . . . who has been divorced from the insured individual for at least 2 years.*" (Emphases added.)

Based on the applicable law as set forth above, substantial competent evidence supports the district court's finding that the statements regarding the ability of Debra to receive Social Security retirement benefits were inaccurate.


2. *Maintenance*

In addition to the erroneous factual statements in the agreement upon which the parties relied to support the division of property, the district court also found on remand

17

that the agreement was unfair, unjust, and inequitable to Debra because it failed to include a provision granting Debra spousal maintenance:

"10. The post nuptial agreement entered into by and between the parties did not provide spousal maintenance for Debra. The distribution of assets infers, and the court finds, that the distribution of assets was to be in lieu of spousal maintenance. The language indicates that the large disparity in the division of assets was to be a way to address Debra's inability to work or have income through Social Security. The exact language states that 'The Assets contributed by David's career and employment have been used by the Parties for maintenance of their lifestyle. For this reason and because Debra will have no social security benefits and, because of her age will have limited ability to obtain gainful employment in the event of a voluntary dissolution of the marriage by either party.'

"11. In fact, several of the assets given to Debra were income producing. For this reason there was a reasonable explanation for the failure of the parties to provide for spousal maintenance [to] Debra.

"12. The Court believes that enforcing the post nuptial as initially agreed to by the parties, and thereby denying spousal maintenance to Debra would be unfair, unjust and inequitable to Debra and to that end the Court has awarded a minimum of $204,000.00 in spousal maintenance from David to Debra. It is anticipated that the amount awarded will be significantly in excess of that amount in light of the Court's instruction that Debra would receive an additional amount equal to 30% of David's salary over $80,000.00."

Notably, Debra does not challenge the district court's ultimate decision to grant her request for maintenance. In fact, Debra specifically requested an award of maintenance in her answer to David's petition for divorce, a request that was separate and distinct from her request in that pleading to have the parties' separation agreement enforced. Instead, the narrow issue presented by Debra on appeal is whether the district court erred by finding the parties intended the one-sided distribution of assets to include an implied agreement that the parties did not intend Debra to receive spousal maintenance.

18

The district court's decision regarding spousal maintenance and Debra's argument on appeal both center on the interpretation of the agreement. To determine whether the district court abused its discretion, this court must examine whether the district court committed legal error in its interpretation. See *Wiles*, 302 Kan. at 74. To the extent that this issue involves interpretation of the parties' agreement, it is subject to the normal rules of contract interpretation, which require de novo review. See *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 961, 255 P.3d 34 (2011) (applying de novo review to interpretation of parties' separation agreement to determine whether district court erred in denying motion to terminate or modify spousal maintenance).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013). Debra contends that because the agreement is silent with regard to spousal maintenance, it is clear that the parties did not intend to include the issue of spousal maintenance in the agreement.

In this case, the separation agreement is wholly silent on the issue of maintenance. The district court readily acknowledged this fact but made an inference—based on other provisions in the contract awarding Debra all of the parties' assets—that the parties intended the one-sided distribution of assets to create a stream of revenue to take the place of spousal maintenance. Specifically, the court noted that "the large disparity in the division of assets was to be a way to address Debra's inability to work or have income through Social Security" and that "several of the assets given to Debra were income producing."

But the inference made by the district court conflicts with ordinary principles of contract law, which dictate that the intention of the parties, to be gathered from the whole instrument, must prevail unless it is inconsistent with some established principle of law.

19

11 Williston on Contracts § 30:20 (4th ed. 2012). Although the parties clearly intended to address Debra's lack of income by allocating more of their *assets* to Debra, the agreement is silent regarding a transfer of *income* in the event of divorce. Contrary to the district court's opinion, nothing in the agreement indicates that the parties ever considered whether Debra would need or receive any income from David in the form of maintenance payments. The division of property and the award of maintenance serve different functions. "The division of property 'operates retrospectively to adjust the rights of the parties to property already accumulated.' Maintenance 'is prospective and deals with future support.'" *In re Marriage of Bowers*, 23 Kan. App. 2d 641, 645, 933 P.2d 176 (1997) (quoting *Beck v. Beck*, 208 Kan. 148, 149, 490 P.2d 628 [1971]). The district court's holding that the agreement's property division was meant to address future maintenance payments is an "impermissible commingling of the concepts of property division and maintenance." *Bowers*, 23 Kan. App. 2d at 645.

The district court's theory regarding the parties' reasons for failing to include a maintenance provision in the agreement is too speculative to discern the parties' intention. Preparing a separation agreement that deals with only the division of property does not preclude a party from seeking maintenance in an action for divorce; thus, waiting to request maintenance until the divorce hearing is not inconsistent with any established principle of law. Moreover, the district court derived its theory of the parties' intent regarding maintenance not from record evidence, but instead from its own suppositions about the intentions of parties based on the court's own experience in practicing family law. For example, the court asserted, without any foundation, that

> "the four corners of the document in a separation agreement typically would deal with not only property but spousal maintenance. In this case there was no mention of spousal maintenance, and I have to at least consider the fact that—the fact that there was no spousal maintenance agreed to by the parties, could be considered or at least may be considered as the intention of the parties not to award spousal maintenance, in light of the huge disparity in personal property division."

Again, accepting an inference to be proof of the parties' intention is contrary to principles of contract interpretation under Kansas law and, more broadly, general contract principles. For this reason, we find there is no evidence to support the district court's finding that the parties intended to provide Debra with all the property in lieu of maintenance. As a result, the district court erred as a matter of law in interpreting the parties' agreement, thereby abusing its discretion. See *Wiles*, 302 Kan. at 74.

In sum, we find substantial competent evidence supports the district court's findings on remand that there were significant inaccuracies in the facts relied upon by David and Debra in agreeing to a one-sided division of property. We also find, however, that the plain language of the contract does not support the court's finding that the parties intended to provide Debra with all the property in lieu of maintenance. Nevertheless, we find the inaccuracies cited by the district court provide a sufficient factual basis for the court to have concluded that the agreement entered into by the parties was unjust and inequitable. In so finding, we conclude the court complied with the Supreme Court's mandate to fully recite the factors and particular circumstances it considered to determine whether the agreement was just and equitable and, given its ultimate finding that the agreement was unjust and inequitable, to explain how those factors and circumstances must prevail over the general rule that valid agreements should be upheld and liberally interpreted to carry out the parties' intentions.

B. *Attorney fees*

Finally, Debra argues that the district court should have ordered David to pay her attorney fees because the parties' agreement included an indemnity provision that required a party who sought a "court order or decision that is contrary to the terms of this Agreement" to pay the attorney fees of the other party. After oral argument, Debra also filed a motion for attorney fees and costs associated with this appeal under Supreme Court Rule 7.07 (2018 Kan. S. Ct. R. 50). We will first address the district court's refusal

21

to sever and independently enforce the indemnity provision, which would entitle Debra to an award of fees, and then address the question of whether Debra should be awarded attorney fees on appeal.

Whether a district court has the authority to award attorney fees is a question of law over which appellate review is unlimited. *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009). To the extent the issue involves the interpretation and legal effect of the agreement, which are matters of law, this court exercises a de novo standard of review. *In re Marriage of Hudson*, 39 Kan. App. 2d 417, 426, 182 P.3d 25 (2008).

The district court held in its February order:

"[T]he Court finds that the attorney fee-provision in the Post-Nuptial Agreement will not be enforced as part and parcel of the property division and the Court's determination of what is fair, just and equitable in this case and denies [Debra's] request for attorney fees under all theories raised by [Debra]. After careful consideration and for the reasons set out above, the Court denies the [Debra's] request to sever the attorney-fee provision from the agreement and enforce it separately under contract law. The Court has carefully reviewed [Debra's] request for attorney fees and the parties' briefing on that issue. Because the Court declines to incorporate the Post-Nuptial Agreement into the divorce decree, or to sever the attorney fee and severability provisions and enforce them separately, no additional findings regarding the reasonableness or unreasonableness of [Debra's] attorney fees are necessary. The Court adopts the proposed Orders prepared by [David's counsel] filed on January 8, 2016, Exhibit C, which are incorporated herein by reference."

1. *Severability*

Debra contends that even if the district court's decision finding that the distribution of assets was unjust and inequitable is upheld, the court should have severed and separately enforced the indemnity provision. The agreement states:

22

"B. *Severability.* If any one or more provisions of this Agreement shall be held invalid or unenforceable such invalidity or unenforceability shall not affect the remaining provisions of this Agreement and that the remaining provisions of this Agreement shall nevertheless be valid and enforceable. If it is necessary that any invalid provision be replaced in order to interpret properly the remaining provisions of this Agreement, any such invalid provision shall be replaced by a valid provision which fulfills as closely as possible the intent and purposes of the invalid provision. To that end, the provisions of this agreement are severable."

This provision is consistent with Kansas contract principles, which require a court to uphold a valid portion of a contract even when other parts of the contract are held invalid. See *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001) ("[I]t is the duty of the courts to sustain the legality of contracts in whole or in part when possible."); *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 462-63, 790 P.2d 404 (1990) (even without a severability clause, "[a] contract that contains valid and invalid provisions in which the lawful provisions can be easily severed will be upheld as to the lawful portion"); *Henshaw v. Smith*, 102 Kan. 599, Syl. ¶ 1, 171 P. 616 (1918) ("If a contract contains provisions some of which are valid and some of which are invalid, and the lawful matter can be readily severed from that which is unlawful, the lawful portion of the contract will be upheld."). Accordingly, the district court erred when it refused to independently consider the indemnity provision in the parties' agreement.

2. *Indemnity*

The indemnity provision of the agreement stated:

"C. *Indemnification.* Each of The Parties agrees to refrain from attempting to obtain any court order or decision that is contrary to the terms of this Agreement. Each of the Parties hereby agrees to indemnify the other for any loss, cost or expense (including attorney fees and expenses) incurred because a Party seeks to obtain judicial modification of this Agreement. This indemnification on behalf of each party shall be binding upon

23

and include any claims, demands, or litigation filed by the legal or personal representatives, executors, heirs, legatees, devisees or beneficiaries of either Party."

This court uses the general principles applicable to all contracts in interpreting indemnity agreements. *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App. 2d 326, 331, 628 P.2d 249 (1981). "[A]n indemnity provision in a separation agreement is construed and enforced like other contracts." *In re Marriage of Hudson*, 39 Kan. App. 2d at 427.

> "The cardinal rule in construing an indemnity provision in a separation agreement is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. See *Bartlett v. Davis Corporation*, 219 Kan. 148, Syl. ¶ 2, 547 P.2d 800 (1976). . . . 'The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous. [Citations omitted.]' If the terms of the contract are clear and unambiguous, meaning that the contract is not understood to reach two or more possible interpretations, the court will enforce the contract in accordance with its terms. [Citation omitted.]" 39 Kan. App. 2d at 427.

Here, it is clear from the language of the agreement that the parties intended any party challenging the agreement in court would be responsible for the other party's attorney fees. Debra contends that her fees resulted from David's actions.

David reiterates his argument below that he did not "repudiate" or otherwise challenge the 2004 agreement but "instead requested the court to follow the law." David contends that he merely "submitted to the court's authority" to determine whether the 2004 agreement was just and equitable under K.S.A. 60-1610(b)(3). The district court adopted this reasoning by incorporating David's Proposed Findings of Fact and Conclusions of Law. But a review of the filings in this case clearly show otherwise.

24

First and foremost, David filed a petition for divorce on June 20, 2007, seeking an "equitable division" of the parties' assets:

> "WHEREFORE, the Petitioner prays that he be granted a decree of divorce from Respondent; and for an equitable division of the property and debts; and for such other and further relief as the Court deems just and equitable."

On its face, David's prayer for relief expressly asks the court to equitably divide the parties' property. "Equity" is defined by Black's Dictionary as

> "1. Fairness; impartiality; evenhanded dealing . . . . 2. The body of principles constituting what is fair and right; natural law . . . .
>
> . . . .
>
> "3. *The recourse to principles of justice to correct or supplement the law as applied to particular circumstances; specif., the judicial prevention of hardship that would otherwise ensue from the literal interpretation of a legal instrument . . . .*"
> (Emphasis added.) Black's Law Dictionary 656 (10th ed. 2014).

Consistent with the legal dictionary definition set forth above, we interpret David's prayer for relief as a request to equitably divide the parties' property to prevent the hardship that he would otherwise bear if the court enforced the terms of the parties' postnuptial agreement. Our interpretation is consistent with the fact that David did not attach a copy of the postnuptial agreement to his petition or otherwise advise the court that such an agreement existed. In fact, the court was not made aware that the parties had agreed and stipulated to what the parties' had just two years before deemed to be a fair and equitable division of property until Debra filed her answer:

> "WHEREFORE, Respondent prays that Petitioner take nothing by his Petition herein; that the Court make a division of the property of Petitioner and Respondent consistent with the Post-Nuptial Agreement; that she have spousal maintenance . . . ."

25

In addition to the prayer for relief in his petition, the record reflects David attempted to obtain a court order contrary to the terms of the parties' agreement on multiple other occasions throughout the course of this long and contentious litigation. On October 29, 2007, David filed a motion for personal property, which requested the court to enter an order directing Debra to turn over to David the following personal property:

- Two key fobs for 2004 Denali
- Olympic fly reel (Christmas Gift to DMT)
- One of two exact duplicate Shimano "Bullwhip" Spinning rods
- One of two exact duplicate Shimano 2500 Spinning Reels and extra spool
- One half of all spinners, lures, flies, and other fishing tackle
- White glass topped patio table, four matching chairs, and two sets of seat cushions
- Three of five bookcases in David's "Study" in the basement
- Comforter/bedspread of her choice other than the mint green
- Stereo downstairs (Black with multi CD changer)
- Anthropology, Greek, Bible Study Aids, Bibles, and Fantasy/Science Fiction books
- Blender (assuming we have more than one)
- Crock pot
- Fondue pot
- Printer in the basement
- The "Many Mansions" cross-stitched "sampler"

On November 6, 2007, the court granted David's motion but noted that David was only entitled to *temporary* possession of the personal property he requested.

After discovery, Debra filed a motion for summary judgment seeking enforcement of the parties' agreement. The memorandum in support of her motion was eight pages

26

long and had four attachments, two of which were the postnuptial agreement and an agreed contract for will. David vigorously contested Debra's motion to enforce the agreement as written. David's memorandum in opposition to the motion was 108 pages long and included 235 alleged uncontroverted facts, 66 exhibits, and an additional 1,400 pages of material on a compact disc (CD). Among other things, David argued in this lengthy pleading that the court should not enforce the agreement as written because it was void as against public policy. David also argued the court should not enforce the agreement as written because it lacked consideration:

> "All of the benefit of the agreement flows to [Debra], but she bears no burden. She gave up nothing at the time David signed the proposed agreement and was not required to give anything up afterwards. The agreement therefore lacks both mutuality and consideration and is not 'valid.'"

And finally, David argued that the court should not enforce the agreement as written because parol evidence was needed to provide context for the agreement.

> "The agreement was prepared and executed as a 'safety net' for [Debra]; it was never intended by either party to be enforced as written. Instead, it was drafted to place [Debra] in control of the division of the assets of the marriage in the unlikely event that the parties divorced. [Debra] gave David repeated assurances that he would not regret signing the agreement, that she would never treat him unfairly in any divorce proceeding, and that she would never 'enforce the agreement as written.' In that regard, she 'hounded, badgered and nagged' him to prepare and sign the agreement but as additional inducement to sign the agreement, she made as many or nearly as many statements to the following effect: 'You know me! I would never take advantage of you or treat you unfairly!' David trusted [Debra] to treat him fairly and on that basis, and to get her stop cajoling him, he prepared and signed the agreement."

After the district court denied Debra's motion for summary judgment, the parties began to prepare for trial. Before trial, the parties filed a proposed pretrial conference

27

order, which was signed and filed by the district court on October 18, 2010. Each of the parties were required to include in this pleading a proposed valuation and division of assets. David's proposal requested the court to divide the assets in a manner contrary to the postnuptial agreement:

| ASSETS: | FAIR MRKT VALUE | PETITIONER | RESPONDENT |
|---|---|---|---|
| 11710 Lost Creek Ct. Wichita, KS | 275,000.00 | | 275,000.00 Sell |
| 700 S. Colorado/ConTrast LLC | 340,000.00 | | 340,000.00 |
| *Foulston Siefkin 401(k) 6-20-07 | 190,811.05 | *190,811.05 | |
| ConCorde Townhomes | 0 | | |
| Bank Accounts: Intrust | | | |
| #3191 | 486.59 | | 486.59 |
| #2015(ConTrast) | 5,219.77 | | 5,219.77 |
| Bank of America #7239 | 1,400.00 | | 1,400.00 |
| Commerce #1183 | 3,992.20 | 3,992.20 | |
| *Intrust IRA | 35,512.36 | *35,512.36 | |
| Intrust Roth IRA | 8,776.23 | 8,776.23 | |
| *Schwab IRA | 98.24 | *98.24 | |
| Schwab Roth IRA | 13.89 | 13.89 | |
| *Intrust IRA | 25,224.28 | | *25,224.28 |
| Intrust Roth IRA | 8,728.60 | | 8,728.60 |
| *Schwab IRA | 70.38 | | *70.38 |
| Schwab Roth IRA | 13.89 | | 13.89 |
| Schwab account | 141,002.94 | | 141,002.94 |
| Savings Bonds: | | | |
| Series E $25.00 | 136.45 | | 136.45 |
| Series E $50.00 | 253.20 | | 253.20 |
| Series E $25.00 | 229.29 | | 229.29 |
| Series EE $5,000.00 | 4,696.00 | | 4 696.00 |
| Series EE $5,000.00 | 4,696.00 | | 4 696.00 |
| Cash | 60,000.00 | | 60,000.00 |
| Brick's gift certificates (3x$500) | 1,500.00 | 1,500.00 | |
| 1997 Lincoln Town Car Cartier Series | 2,700.00 | | 2,700.00 |
| 2004 GMC Yukon XL Denali | 12,525.00 | 12,525.00 | |
| 1988 Jeep Grand Wagoneer | 2,487.00 | | 2,487.00 |
| Household Goods/Furnishings | | | |
| CDC Trust distribution | 35,000.00 | | 35,000.00 |

| | | | |
|---|---|---|---|
| Oil & Gas | Nominal | | X |
| Tax refunds-KLS client trust | 19,466.13 | | 19,466.13 |
| Schwab withdrawal | 30,025.00 | | 30,025.00 |
| **DEBTS** | | | |
| Suntrust Mtg. | 266,603.39 | Pay w/sale | Proceeds |
| | | | |
| TOTAL without house | 935,064.49 | 253,228.97 | 956,835.52 |
| Estimate tax | (75,514.89) | (67,926.49) | (7,588.40) (266,602.39) |
| | | | |
| Post Filing: Real Estate taxes ('09) | 4,700.93 | Respondent | |

Although David never explained why there is an asterisk by some of the valued assets, it appears those assets could be liquidated only if certain criteria is met.

Based on the prayer for relief in the divorce petition, his motion requesting personal property to which he would not be entitled under the postnuptial agreement, and the brief he filed in opposition to summary judgment in which he argued the court should not enforce the agreement as written, we find David expressly violated the parties' agreement to refrain from attempting to obtain any court order or decision contrary to the terms of the postnuptial agreement. As such, David must indemnify Debra "for any loss, cost or expense (including attorney fees and expenses) incurred because [David sought] to obtain judicial modification of [the postnuptial agreement]."

The district court erred in failing to sever and separately enforce the indemnity clause in the postnuptial agreement and, in turn, erred in summarily denying Debra's request for attorney fees, costs, and expenses as required by the indemnity clause when triggered. For this reason, we reverse the court's decision in this regard and remand the matter with directions to award a "reasonable" amount of attorney fees considering all of the relevant factors as set forth in the Kansas Rules of Professional Conduct (KRPC) 1.5(a) (2018 Kan. S. Ct. R. 294).

Turning to Debra's motion for attorney fees and expenses incurred in this appeal, we note that Supreme Court Rule 7.07(b) (2018 Kan. S. Ct. R. 51) permits an appellate court to "award attorney fees for services on appeal in any case in which the district court had [that] authority." Having found the district court should have severed and separately enforced the indemnity provision, which in turn gave the district court authority to award Debra reasonable attorney fees, we also may entertain a fee request.

Debra's appellate attorney, Stephen P. Weir, asks for $16,733.50 in attorney fees and expenses (91.9 hours at $180 per hour plus $156.50 for the appellate filing fee and $35 in transcript fee expenses). David has not filed a response to that motion. We assume, therefore, that he does not claim that Weir spent an unreasonable number of hours on the appeal or object to the expenses.

We have reviewed Weir's detailed billing invoice using the factors set forth in KRPC 1.5(a), which requires that a lawyer's fee be reasonable:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

There were two issues presented on appeal. First, Debra alleged substantial competent evidence did not support the district court's conclusion that the division of property in the postnuptial contract was unfair and inequitable. Second, Debra alleged the district court erred in failing to sever and separately enforce the indemnity clause in the postnuptial agreement and, in turn, summarily denying Debra's request for attorney fees, costs, and expenses as required by that indemnity clause.

From a legal perspective, neither one of these issues is novel or difficult. But both of the issues required Debra's attorney to comb through the transcripts, the exhibits, and the other parts of the voluminous record to ferret out the facts necessary to support his

30

client's position. In addition, Weir states in his affidavit that a significant amount of time spent on this case was not actually billed. In support of this statement, Weir explains that it is difficult to effectively communicate with his client, who has suffered both a traumatic brain injury and a stroke. Weir notes that "[t]he client is highly intelligent, having graduated from law school, but due to her injuries has difficulty in focusing on one issue for periods of time."

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

Weir states in his affidavit that this second appeal has lasted over a year, he charged Debra at a reduced rate of $180 per hour, and the time he spent on Debra's appeal could have been devoted to other clients paying his regular billing rate of $240 or $300 per hour.

(3) The fee customarily charged in the locality for similar legal services.

Weir states in his affidavit that, as reported by the ABA Journal Weekly Newsletter of September 23, 2016, the nationwide average attorney fee hourly rate at that time was $232 per hour. Weir also states that the attorney fee rate charged to Debra is at or below those rates customarily charged for the same or similar matters by his firm and is below market rate as an accommodation to Debra based on the original contract for representation by his firm signed in 2011.

(4) The amount involved and the results obtained.

Although it will be up to the district court on remand to determine what amount of fees charged by Debra's attorney is reasonable, we note the request for fees in the lower court divorce case is estimated by Debra to be approximately $264,000.

31

(5) The time limitations imposed by the client or by the circumstances.

       This factor does not weigh in favor of or against an award of fees.

(6) The nature and length of the professional relationship with the client.

       The attorney relationship with Debra began in 2011, six years before this appeal was filed.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

       Weir has 35 years of experience practicing law. Weir has been licensed to practice law in Kansas since 1983, having graduated magna cum laude from Washburn University School of Law.

(8) Whether the fee is fixed or contingent.

       The fee was charged by the hour for the work accomplished.

       Again, while the issues in this appeal are relatively straightforward, Weir had to review a voluminous record to properly prepare a sufficient record on appeal to support his client's claim that David violated the parties' agreement to refrain from attempting to obtain any court order or decision contrary to the terms of the postnuptial agreement. The rate charged is well within the range of rates charged for similar legal services, and Weir has extensive experience in the Kansas appellate courts. We find the amount of time spent and his hourly rate reasonable for the work performed. We therefore assess $16,733.50 in attorney fees and expenses against David for the work performed on this appeal.

Affirmed in part, reversed in part, and remanded for further proceedings as directed above.